IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 97-40592

---

JERRY C. McCLELLAND,

                                   Plaintiff-Appellant,

        versus

ROBERT C. GRONWALDT, Individually and as
agent for Mobil Oil Corporation; MOBIL OIL
CORPORATION; NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

                                   Defendants-Appellees.

---

Appeal from the United States District Court for the
Eastern District of Texas

---

September 9, 1998

Before GARWOOD, SMITH and EMILIO M. GARZA, Circuit Judges.

GARWOOD, Circuit Judge:

        Plaintiff-appellant Jerry C. McClelland (McClelland) requested and received certification under 28 U.S.C. § 1292(b) to appeal the district court's denial of his motion to remand his suit to state court. We hold that the district court erred in denying McClelland's motion to remand, and we reverse the district court's order and direct that the case be remanded to the state court.

### Facts and Proceedings Below

In 1988, McClelland was allegedly injured in the course of his employment at a  refinery located in Beaumont, Texas, and operated by his employer, defendant-appellee Mobil Oil Corporation (Mobil). The injury required medical attention, and McClelland subsequently filed a related claim for workers' compensation under the Texas workers' compensation act.  Dissatisfied with the handling of his claim, McClelland brought this suit in Texas state court against Robert C. Gronwaldt, the individual who had handled his claim; National Union Fire Insurance Company, which provided Mobil's workers' compensation insurance; and Mobil.[1]

McClelland's original suit, filed in December of 1992, alleged a variety of state law causes of action arising principally out of the manner in which his particular workers' compensation claim had been handled.[2]  McClelland subsequently amended his complaint to allege that Mobil was violating state insurance and workers' compensation laws by conspiring with National Union to allow workers' compensation claims to be adjusted by employees of a Mobil subsidiary, rather than by independent claims adjusters as is allegedly required under state law.  He also asserted that Mobil's

---

[1]    To the extent that there is no relevant distinction to be made among them, the three defendants-appellees will be referred to collectively as "Mobil" in the interest of simplicity.

[2]    He alleged, *inter alia*, breach of good faith and fair dealing in handling of insurance claim, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, negligent handling of an insurance claim, intentional infliction of emotional distress, and breach of insurance contract.

purported workers' compensation plan violated both state workers' compensation law and state insurance law and regulations.[3]

Alleging that the defendant-appellees had conspired to defraud him and similarly situated individuals of the benefits to which they were entitled under their workers' compensation insurance, McClelland sought certification of a class of persons consisting generally of all individuals employed by Mobil in the state of Texas whose workers' compensation claims were handled, settled, or adjusted by a Mobil employee between 1988 and 1993. The state trial court granted class certification on June 20, 1994.

During the time McClelland's case was pending in the Texas state courts, Mobil was undergoing a nationwide restructuring. Seeking to reduce its workforce, Mobil began offering voluntary separation benefit packages to its employees. In 1992, a uniform plan, referred to as the "Enhanced Separation Benefits Package" (ESBP), was offered to employees of "all impacted units." The ESBP was eventually offered to employees of the Beaumont refinery.

The ESBP was initially available only to non-union employees

---

[3] The gravamen of the class action suit is that Mobil conspired with various other entities to create the impression that Mobil was providing workers' compensation pursuant to the laws and applicable regulations of the state of Texas, when in fact Mobil was engaging in an allegedly unlawful form of "self insurance" and was allowing workers' compensation claims to be adjusted by Mobil employees, rather than by independent adjusters, which also allegedly violates state law. The claims asserted include, *inter alia*, breach of good faith and fair dealing, fraudulent representations regarding coverage, negligent handling of claims, willful denial of meritorious claims, and the handling of claims in violation of various state insurance regulations.

3

at the Beaumont refinery. But Mobil subsequently negotiated a Memorandum of Agreement (MOA), dated September 1, 1995, with the Oil, Chemical, and Atomic Workers International Union (the Union), which extended a plan analogous to the ESBP to Mobil employees in the bargaining units represented by the Union. The ESBP and MOA both required participating employees to sign a "Separation Agreement" that included a broad waiver provision, releasing "all claims" arising from both the employee's employment and termination. Due at least in part to the interlocutory appeal of the class certification, many of the potential members of the class were not promptly notified of the class action, and McClelland, as class representative, became concerned that the broad release included in the separation agreement could be construed to waive those claims that were the subject of the class action.[4] Consequently, McClelland filed in the state court case a motion dated September 27, 1995, seeking an injunction prohibiting "Mobil from continuing with this particular program [*i.e.*, the ESBP and MOA] to the extent it requires releasing causes of action that the plaintiffs may have."[5]

---

[4] The class certification order was affirmed by the Beaumont Court of Appeals in a December 29, 1994, unpublished opinion, and rehearing was denied January 19, 1995. *Gronwaldt v. McClelland*, No. 09-94-238CV, 1994 WL 720018 (Tex.App.—Beaumont). Apparently, thereafter review or relief in the Texas Supreme Court was unsuccessfully sought.

[5] On July 26, 1995, McClelland had filed in the state court a request for, and that court had granted, a similar temporary restraining order (TRO) which expired by its own terms ten days

4

On October 17, 1995, Mobil filed a notice of removal, alleging that the plaintiffs' motion for injunctive relief asserted claims subject to "complete preemption" and therefore created federal question jurisdiction supporting removal. Specifically, Mobil contended that the attempt to enjoin execution of the MOA, a collective bargaining agreement (CBA), triggered complete preemption under the Labor Management Relations Act[6] (LMRA), section 301,[7] because resolution of the plaintiffs' claim for injunctive relief was substantially dependent on the terms of the MOA and would require the state court to interpret the release provision contained in the Separation Agreement. Mobil also argued that the plaintiffs' motion gave rise to complete preemption under the Employment Retirement Income Security Act of 1974[8] (ERISA), asserting that the ESBP constituted an ERISA plan and, consequently, that any attempt to enjoin the administration of the ESBP in state court was completely preempted under ERISA and thus constituted a federal claim sufficient to provide a jurisdictional basis for removal.

---

later. McClelland's September 27, 1995, filing also sought a TRO, which was granted, and a temporary and permanent injunction. The case was removed before any injunction was acted on and the TRO apparently expired by its own terms before or a few days after removal.

[6]    29 U.S.C. § 141, *et seq.*

[7]    29 U.S.C. § 185(a).

[8]    29 U.S.C. § 1001, *et seq.*

5

On October 23, 1995, McClelland filed a motion to remand the case to state court, arguing, *inter alia*, that removal was improvident because the motion for injunctive relief was so tangential to LMRA or ERISA concerns that it was insufficient to trigger "complete preemption" so as to provide the federal district court with removal jurisdiction under either statute. McClelland also pointed out that the motion upon which the removal was based would soon become moot because the "self-nomination" period during which employees could elect to participate in the MOA and ESBP plans was relatively short and had already commenced. As a consequence, McClelland asserted, unless injunctive relief were to be granted almost immediately the plaintiffs' request for a "restraining order will be moot and there will be absolutely no federal question left for this court to decide."

In a memorandum opinion dated November 16, 1995, the district court denied the plaintiffs' motion to remand the case to state court. 909 F.Supp. 457 (E.D. Tex. 1995). The district court held that the motion for injunctive relief asserted claims that were completely preempted by both the LMRA and ERISA, thereby providing a basis for federal question jurisdiction, and further determined that it properly exercised supplemental jurisdiction over the underlying state law claims.

Subsequent to the district court's denial of the motion to remand, the case appears to have languished in federal court with

6

little significant progress for almost a year.  Then, on October 4,
1996, the district court held a hearing regarding all pending
motions.  At this hearing, questions regarding the propriety of
removal and the district court's subject matter jurisdiction were
raised and argued at some length.  These proceedings prompted the
district court to note that "[s]ince the October 4, 1996 hearing it
became clear to this court that there is a substantial difference
of opinion on whether the state court's TRO involved, and will
likely involve as a matter of law, an interpretation of a CBA or
the interpretation and administration of an ERISA plan" sufficient
to sustain its jurisdiction under a theory of complete preemption.
*McClelland v. Gronwaldt*, 958 F.Supp. 280, 283 (E.D. Tex. 1995).

On February 19, 1997, the district court certified its
November 16, 1995, order for interlocutory appeal pursuant to 28
U.S.C. § 1292(b), identifying three "controlling" questions of law
regarding the propriety of its continued retention of jurisdiction
over the case *sub judice*.[9]

---

[9]  The questions, as formulated by the district court, are as
follows:

> "I) whether the state court's TRO and the
> plaintiff's state court pleading seeking a permanent
> injunction would require the state courts to interpret
> and administer a CBA, thus vesting this court with
> jurisdiction pursuant to 28 U.S.C. § 1331;
> II) whether the state court's TRO and the
> plaintiff's state court pleading seeking a permanent
> injunction would require the state courts to interpret
> and administer an ERISA plan, thus vesting this court
> with jurisdiction pursuant to 28 U.S.C. § 1331;  and
> III) whether, if this court had federal question

**Discussion**

Our analysis in this appeal involves two steps and two standards of review. First, the district court's preemption analysis, based upon which the court held that it had federal question jurisdiction, is a determination of original jurisdiction subject to *de novo* review. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5th Cir. 1994); *Carpenter v. Wichita Falls Indep. School Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). Second, we review the district court's retention of jurisdiction of the state law claims for abuse of discretion. *Hook*, 38 F.3d at 780 (citing *In re Wilson Indus.*, 886 F.2d 93, 95-96 (5th Cir. 1989)).[10]

I. Complete Preemption and Removal

Pursuant to statute, removal is generally available to the defendant in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" founded on the existence of a claim or right "arising

---

jurisdiction pursuant to 28 U.S.C. § 1331 at the time of removal, this court now has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367."

*McClelland v. Gronwaldt*, 958 F.Supp. 280, 283 (E.D. Tex. 1995).

[10]    *See also Jones v. Roadway Express, Inc.*, 936 F.2d 789, 792 (5th Cir. 1991) ("The Supreme Court has held that, under the doctrine of pendent jurisdiction, a federal district court has discretion to remand a properly removed case to state court when all federal-law claims have been eliminated and only pendent state-law claims remain.") (citation omitted); and *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (stating standard of review).

8

under" federal law. 28 U.S.C. § 1441(a) and (b). In the case at bar, although no federal issue appeared on the face of the motion for injunctive relief that provided the basis for removal, the district court held that it had "federal question" jurisdiction based on theories of complete preemption under both the LMRA and ERISA. While federal courts typically ascertain the existence of federal question jurisdiction by applying the familiar "well-pleaded complaint" rule,[11] there exists a "corollary" to this rule, which is most frequently referred to as the doctrine of "complete preemption." This doctrine has been used to define limited categories of state law claims that are "completely preempted" such that "any civil complaint raising this select group of claims is necessarily federal in character," no matter how it is characterized by the complainant in the relevant pleading. *Metropolitan Life Ins. Co. v. Taylor*, 107 S.Ct. 1542, 1546 (1987). In effect, the application of complete preemption "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 1547. Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to "federal

---

[11]     Ordinarily our "arising under" analysis focuses on the plaintiffs' well-pleaded complaint, for "[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 107 S.Ct. 1542, 1546 (1987).

9

question" jurisdiction and thus may provide a basis for removal.[12] The Supreme Court has held the doctrine of complete preemption applicable to certain claims preempted by ERISA, as well as to certain claims preempted by the LMRA.[13]

II.  LMRA Preemption

We begin by addressing the district court's first certified question, whether the plaintiffs' request for injunctive relief necessarily required the state court to interpret a collective

---

[12]     We have summarized the effect of complete preemption as follows:

> "Under this doctrine, 'Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character,' and the case may be removed even if no federal claim is asserted in the complaint and federal preemption, raised as a defense, is the only issue of federal law implicated in the case."  *Anderson v. Electronic Data Systems Corp.*, 11 F.3d 1311, 1315 (5th Cir. 1994) (quoting *Taylor*, 107 S.Ct. at 1546).

[13]     The Supreme Court first applied what has come to be referred to as complete preemption in *Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists*, 88 S.Ct. 1235, 1237 (1968), in which the Court not only held that a state action for breach of contract, where the contract in question was a collective bargaining agreement, was preempted by section 301 of the LMRA, but also held that although the plaintiff had relied solely on state law and had chosen to bring suit in state court, the preemptive power of the LMRA was sufficient that the claim nevertheless "arose under" federal law, thus creating federal question jurisdiction.  The Supreme Court subsequently explained that "the preemptive force of § 301 is so powerful as to displace entirely" state actions for breach of a collective bargaining agreement. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 103 S.Ct. 2841, 2847 (1983).  In *Metropolitan Life Ins. Co. v. Taylor*, 107 S.Ct. 1542 (1987), the Supreme Court extended the doctrine of complete preemption to state actions falling within the preemptive scope of ERISA's civil enforcement provision, section 502(a).

bargaining agreement, thereby triggering complete preemption under the LMRA.

The displacement of conflicting state laws and the provision of a federal forum pursuant to "complete preemption" under the LMRA function to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div., Magic Chef, Inc.*, 108 S.Ct. 1877, 1880 (1988). *See also Teamsters v. Lucas Flour Co.*, 82 S.Ct. 571, 576-77 (1962). To further this goal, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Lingle*, 108 S.Ct. at 1881. Thus, complete preemption under the LMRA applies when "resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between parties to a labor contract." *Wells v. General Motors Corp.*, 881 F.2d 166, 172 (5th Cir. 1989).

In the case *sub judice* it is uncontested that the MOA qualified as a CBA and that the waiver provision contained in the accompanying Separation Agreement was an integral part of that

11

agreement.[14] Applying *Lingle*, the district court considered whether resolution of the plaintiffs' motion depended on the terms of a CBA and concluded that "[t]he temporary restraining order sought by the Plaintiffs [would] necessarily require[] the state court to make an interpretation of the MOA and the relevant Separation Agreements." 909 F.Supp. at 463. Because resolution of the plaintiffs' motion would have necessitated construal of the waiver provision contained in the Separation Agreement and possibly the interaction of that provision with the MOA, the district court held that the plaintiffs' motion for an injunction triggered complete preemption, thus creating federal question jurisdiction.

As discussed above, the fundamental rationale of LMRA preemption is to promote uniformity in the law used to interpret CBAs by mandating the application of federal law and by providing a federal forum. Obviously this rationale, and consequently the applicability of complete preemption, endure only so long as there is a live, persisting "dispute," the resolution of which "substantially depends" on the interpretation of a CBA. The district court's memorandum opinion and accompanying order are dated November 16, 1995, and are "time stamped" as having been

---

[14]    As we held in *Thomas v. LTV Corp.*, 39 F.3d 611 (5th Cir. 1994), to the extent that an agreement between an employer and employee cannot be construed independently of a CBA——as for example when the agreement seeks to limit or condition a CBA——the purportedly separate agreement "is subject to a preemption analysis just as if it was a CBA." *Id.* at 618.

12

filed with the clerk of the court at 4:24 p.m. on that day. Pursuant to a negotiated provision of the MOA, the "self-nomination" or "election" period for participation in that program expired on November 17, 1995, the day after the court rendered the order denying remand. This temporal proximity raises the threshold question whether, at the time the district court rendered its decision, there still existed a live issue as to the potential interpretation of the waiver provisions by a state court. If there was no realistic possibility that a state court could rule on the plaintiffs' motion for injunctive relief during the "election" period, then the LMRA preemption issue was moot and the district court erred in considering it as providing a basis for federal question jurisdiction. Had the case been remanded on November 16, 1995, under the federal rules governing post-remand procedures, no state court could have exercised jurisdiction over the case until a certified copy of the remand order had been mailed by the clerk of the federal district court to the clerk of the state court. *See* 28 U.S.C. § 1447(c).[15] Given the time necessarily involved in

---

[15] Section 1447(c) provides, in pertinent part, that upon determination that a case should be remanded, "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case." 28 U.S.C. § 1447(c).

It should be noted that the actual mailing of the remand order has legal significance in determining the time at which the district court is divested of jurisdiction. *See, e.g., Browning v. Navarro*, 743 F.2d 1069, 1078-79 (5th Cir. 1984) (citing cases and treatises generally supporting the proposition that pursuant to the language of section 1447(c), a federal court is completely divested

mailing a certified copy of the remand order to the clerk of the state court as well as the time required to schedule and recommence proceedings, the potential for a state court to rule on the motion for injunctive relief before the "election" period under the MOA expired was negligible on the date that the district court rendered its decision.  Thus, while at the time the case was removed, a state court ruling on the plaintiffs' motion was imminent, by the time the district court rendered its opinion, the possibility of a state court's interpreting the MOA had, for all practical purposes, ceased to exist.  Consequently, the issue had become effectively moot, and the court should not have based its continuing federal question jurisdiction on complete preemption under the LMRA.

The district court's analysis is also subject to a second, more fundamental, mootness problem.  It is axiomatic that "[a] request for injunctive relief remains live only so long as there is some present harm left to enjoin."[16]  This is a corollary of the more general rule that "[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Pacific Ins. Co. v. General Development Corp.*, 28 F.3d 1093, 1096 (11th Cir. 1994).  The relief sought by the plaintiffs was an injunction restraining Mobil from soliciting

---

of jurisdiction once it mails a certified copy of the order to the clerk of the state court.).

[16]     *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995).

14

waivers under the ESBP and MOA plans from potential class members. This relief was requested on September 27, 1995, near the beginning of the election period under the MOA.[17]  By November 16, 1995, the "harm" that the plaintiffs had sought to enjoin was virtually complete.  Irrespective of a court's ruling on the motion, the election period, and the concomitant harm alleged by plaintiffs, would end the next day.  Thus, no "meaningful relief" as to the MOA remained available under the motion at the time of the district court's decision.[18]

---

[17]     The district court found that the MOA "probably became effective September 17, 1995."  909 F.Supp. at 459.

[18]     We note this potential mootness problem was raised at several points by the plaintiffs.  In the motion to remand, it was asserted that the relief sought would be effectively unavailable within a relatively short period of time and as a consequence that plaintiffs' request for a "restraining order will be moot and there will be absolutely no federal question left for the court to decide."  After the district court denied the motion to remand, class counsel took the position that the motion had been mooted because the "self-nomination" period had expired.  In the October 4, 1996, hearing, plaintiffs' counsel argued that the plaintiffs had consistently, from the time of the motion to remand, taken the position that the motion was moot, and in open court repeatedly stated that plaintiffs were no longer seeking any type of injunctive relief.  The transcript of the October 4, 1996, hearing indicates that counsel for the McClelland class claimed that "in addressing the court about this issue we took the position that it was moot, that we were no longer seeking the relief sought, because we couldn't get it.  And if there is any question about that, then I'll formally request that the pleading be withdrawn at this time."
     The district court noted that the plaintiffs failed to formally amend or withdraw the motion.  958 F.Supp. at 282 n.4. This misses the relevance of plaintiffs' argument as to mootness. The question we consider is not whether the plaintiffs took sufficient steps to withdraw their motion.  Rather, assuming, *arguendo*, that the motion was *not* withdrawn, the question is whether any court was in a position to provide the plaintiffs meaningful relief.

15

Thus, even if——contrary to the reasoning above——there existed some abstract possibility that a state court might rule on the plaintiffs' request for injunctive relief, the first day on which it could do so would appear to have been the day on which the election period under the MOA expired by its own terms. Consequently, at least as it pertained to the MOA, the plaintiffs' motion for injunctive relief had become moot by the time the district court rendered its November 16, 1995, order.[19] Accordingly, the district court erred in treating the motion as a "live" pleading for purposes of its LMRA preemption analysis. In sum, because the motion for injunctive relief, at least as it related to the MOA, had become moot, and because there was no longer any possibility that a state court would rule on the motion

---

[19]     We are not persuaded by Mobil's argument that because it has not relinquished the "right" to reimplement a similar program this issue is not moot. The MOA is a collectively-bargained instrument, and Mobil did not retain any "right" *under the MOA* to unilaterally extend the election period or to reinstate the agreement. Thus, Mobil, whatever it might have the right to do apart from Union agreement, could not reinstitute a similar program *as a part of or pursuant to the MOA* without negotiating a new agreement with the Union. Moreover, Mobil does not even claim to have (or have had) any specific plans to reimplement a similar separation benefits program involving the union workers at the Beaumont refinery. Nor does Mobil assert that it intends to pursue renegotiation with the Union regarding the implementation of such a plan. Thus, Mobil's argument that it could recommence the behavior sought to be enjoined is unsupported speculation——and self-serving speculation at that. Mobil's mere assertion that it might, at some point in the future, reinstate a similar benefit containing a similar separation agreement and waiver clause, without any specific allegation whatsoever that it actually plans to do so, is insufficient to prevent mootness.

16

during the MOA "election" period, we hold that the district court erred in relying on complete preemption under the LMRA as a continuing basis of federal question jurisdiction in its November 16, 1995, denial of plaintiffs' motion to remand.[20]

III.  ERISA Preemption

The second question identified by the district court in its certifying opinion is whether the plaintiffs' request for injunctive relief "would require the state courts to interpret and administer an ERISA plan, thus vesting this [district] court with [removal] jurisdiction."  958 F.Supp. at 283.  Because the district court applied the wrong standard in determining whether the plaintiffs' motion for injunctive relief triggered "complete preemption" as opposed to "ordinary preemption," we hold that the

---

[20]    Mobil argues in its brief on appeal that we must review this case on the facts as they existed at the time of removal and that any subsequent events are irrelevant to our review.  Although Mobil is correct that we typically review questions of subject matter jurisdiction on the basis of the facts as they existed when the relevant pleading was filed, our review is not similarly limited when determining questions of mootness.  "Events both before and after the filing of a claim may render a claimant's case moot.  Mootness doctrine requires that the controversy posed by a complaint be present throughout the litigation process," *Baccus v. Parrish*, 45 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks and citation omitted).  *See also Carr v. Alta Verde Industries, Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) (stating that all questions of subject matter jurisdiction except mootness are determined as of the date of the  filing of the complaint, and subsequent events do not deprive the court of jurisdiction).  *See generally*, 19 *Moore's Federal Practice* § 205.02[3][a] (3d ed. 1998) ("A controversy may be or become moot at any stage of the proceedings due to a change in circumstances that ends the harm or resolves the dispute.") (collecting cases).

court erred in concluding that it had removal jurisdiction based on ERISA preemption.

In its denial of plaintiffs' motion to remand, the district court framed its ERISA preemption analysis solely in terms of whether the plaintiffs' motion for injunctive relief sufficiently "related to" an ERISA plan so as to be preempted, applying the standard for determining ordinary preemption and failing to consider the additional requirements necessary to implicate "complete preemption." In analyzing whether the plaintiffs' claims "related to" an ERISA plan, the court concluded that although "the underlying state tort claims in this case do not necessarily implicate an ERISA plan, the Plaintiffs' Motion for Temporary Restraining Order seeks to enjoin the operation and implementation of an ERISA plan by operation of state law." 909 F.Supp. at 462. Accordingly, the court found that the plaintiffs' motion directly "related to" an ERISA plan and, on the basis of this determination, held that "[t]o the extent that the Plaintiffs' application for state court injunctive relief would halt the administration of the plan or the payment of benefits thereunder, the Plaintiffs' action now rests properly in federal court." *Id.* Thus, the district court's holding was based on the reasoning that because the plaintiffs' motion "related to" an ERISA plan within the meaning of the statute's general preemption provision, section 514(a),[21] the

---

[21] 29 U.S.C. § 1144(a).

18

district court was "vested" with federal question jurisdiction and, consequently, that removal was proper.  *See* 909 F.Supp. at 461-62.

The error in the district court's analysis stems from its failure to distinguish clearly between the concepts of "ordinary" and "complete" preemption.[22]  Although we have, in past decisions, both explicitly and implicitly differentiated between these two concepts,[23] as have our sister circuits,[24] the district court appears

---

[22]    The district court is certainly not the only court that has done so.  *See, e.g., Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996) (noting that "because the jurisdictional doctrine of 'complete preemption' included the word 'preemption,' confusion arose between the jurisdictional doctrine and the federal defense of preemption").

[23]    For example, in *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942 (5th Cir. 1995), we explained that,

> "Ordinarily, preemption of state law by federal law is a defense to a plaintiff's state law claim, and therefore cannot support federal removal jurisdiction under the 'well-pleaded complaint' rule.  'Complete preemption,' in contrast, exists when the federal law occupies an entire field, rendering any claim a plaintiff may raise necessarily federal in character."  *Id.* at 945 n.5 (citing *Franchise Tax Board*, 103 S.Ct. at 2854).

*See also Anderson v. Electronic Data Systems Corp.*, 11 F.3d 1311, 1315 (5th Cir. 1994) ("A finding that a claim is preempted does not end our analysis, since preemption is raised as a defense and ordinarily federal question jurisdiction is determined by the well-pleaded complaint rule, which looks to the complaint in determining subject matter jurisdiction.").

[24]    *See, e.g., Toumajian v. Frailey*, 135 F.3d 648, 655 (9th Cir. 1998) ("This distinction is important, for if the doctrine of complete preemption does not apply, even if the defendant has a defense of 'conflict preemption' within the meaning of § 1144(a) because the plaintiff's claims 'relate to' an ERISA plan, the district court, being without subject matter jurisdiction, cannot rule on the preemption issue."); *Rice v. Panchal*, 65 F.3d 637, 640

19

not to have properly taken account of this distinction in its analysis. A brief discussion of the two concepts and an outline of the analysis applicable to the determination of complete preemption under ERISA follow.

A. Ordinary Preemption

ERISA section 514(a) provides for the general preemption of "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" regulated by that statute.[25]  29 U.S.C. § 1144(a) (emphasis added). Preemption pursuant to section 514(a), however, merely results in the displacement of state law. Because ordinary preemption almost invariably arises as a defense, and thus does not appear on the face of the plaintiff's well-pleaded complaint, section 514(a) preemption typically cannot serve

---

(7th Cir. 1995) ("The difference between complete preemption under § 502(a) and conflict preemption under § 514(a) is important because complete preemption is an exception to the well-pleaded complaint rule that has jurisdictional consequences."); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995) (emphasizing the importance of the distinction due to the jurisdictional consequences of its application); *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995) (criticizing the failure to "keep complete preemption removal and ordinary preemption doctrine separate and distinct").

[25]     As this Court has previously noted, section 514(a) was drafted  to be "deliberately expansive," broadly displacing inconsistent state laws so as to implement "Congress's decision to create a comprehensive, uniform federal scheme for the regulation of employee benefit plans" through the enactment of ERISA. *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1329 (5th Cir. 1992).  *See also id.* at 1328-29 (discussing the broad interpretation of the phrase "relates to" in the context of ordinary ERISA preemption).

20

as the basis for removal jurisdiction.[26] As the Supreme Court stated in *Taylor*, "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law."[27] Accordingly, the district court's finding that the plaintiffs' motion for injunctive relief directly "related to" the implementation and administration of an ERISA plan was an insufficient basis for its holding that the motion triggered complete preemption and, consequently, the court erred in determining that it had removal jurisdiction.

B.  Complete Preemption

In contrast to ordinary preemption, complete preemption not only displaces substantive state law, but also "recharacterizes" preempted state law claims as "arising under" federal law for the purposes of determining federal question jurisdiction,[28] typically making removal available to the defendant.  Thus, "complete

---

[26]    Under the well-pleaded complaint rule, a cause of action "arises under" federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. *Metropolitan Life Ins. Co. v. Taylor*, 107 S.Ct. 1542, 1546 (1987).  Because "[f]ederal pre-emption is ordinarily a federal defense to the plaintiff's suit," and as such "does not appear on the face of a well-pleaded complaint," federal preemption typically "does not authorize removal to federal court."  *Id.* at 1546.

[27]    107 S.Ct. at 1547 (citing *Franchise Tax Board*, 103 S.Ct. at 2854-56).

[28]    "[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Board*, 103 S.Ct. at 2854.

21

preemption" is less a principle of substantive preemption than it is a rule of federal jurisdiction.[29]  In other words, complete preemption principally determines not whether state or federal law governs a particular claim, but rather whether that claim will, irrespective of how it is characterized by the complainant, be treated as "arising under" federal law.  In sum, complete preemption "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," generally rendering the entire case removable to federal court at the discretion of the defendant.  *Taylor*, 107 S.Ct. at 1547.

C.  Complete Preemption Analysis

Although "ordinary" and "complete" preemption are conceptually and functionally distinct, they are analytically related insofar as ordinary preemption is a necessary—but obviously not a sufficient—precondition to complete preemption in the context of ERISA.  In *Hartle v. Packard Electric*, we held that "ordinary" preemption was a "prerequisite to [the] exercise of jurisdiction" pursuant to "complete preemption."[30]  Accordingly, the first step

---

[29]    *See, e.g., Lister v. Stark*, 890 F.2d 941, 943 n.1 (7th Cir. 1989) (commenting that "[t]he use of the term 'complete preemption' is unfortunate, since the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine").

[30]    877 F.2d 354, 355 (5th Cir. 1989) ("A prerequisite to this exercise of [complete preemption] jurisdiction, however, is that the state law claims actually be preempted by ERISA.").

in the complete preemption analysis is to determine whether the claim is subject to ordinary preemption under section 514(a).[31] This leaves the obvious question of what more is required to bring a claim subject to ordinary preemption within the scope of complete preemption.

This question has been answered, at least in substantial part, by the Supreme Court in *Franchise Tax Board* and *Taylor*. In *Franchise Tax Board*, the Court suggested, but did not have occasion to hold, that the civil remedies provided by ERISA might give rise to complete preemption, stating that "[i]t may be that, as with § 301 as interpreted in *Avco*, any state action coming within the scope of § 502(a) of ERISA would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law." 103 S.Ct at 2854. Subsequently, in *Taylor*, the Court reached and decided this issue, holding that section 502(a)(1)(B) of ERISA completely preempted state law claims falling within its scope.[32]

In *Anderson v. Electronic Data Systems, Corp.*, 11 F.3d 1311,

---

[31]    Our subsequent cases have followed this two-step approach. *See, e.g., Kramer v. Barney*, 80 F.3d 1080, 1083 ("Having concluded that [Plaintiff's] state law claims are preempted, we must next consider whether ERISA displaces those claims under the complete preemption doctrine."); and *Anderson v. Electronic Data Systems Corp.*, 11 F.3d 1311, 1313 (applying two-prong analysis).

[32]    107 S.Ct. at 1547-48. The Court also noted that "Congress has clearly manifested an intent to make causes of action within the scope of § 502(a) removable to federal court." *Id.* at 1548.

23

1315 (5th Cir. 1994), we construed the Supreme Court's decision in *Taylor* as holding that complete preemption in the context of ERISA applies to those claims that fall within the scope of section 502(a).[33]  In *Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996), we construed *Taylor* a bit more narrowly, interpreting its specific holding as being limited to claims falling within the scope of section 502(a)(1).  *Id.* at 1083.  We reasoned, however, that the Court's analysis supported extending the scope of complete preemption to claims falling under section 502(a)(2), and held that "because [plaintiff's] state law claims fall within the enforcement provisions of section 502, they are completely preempted and the action was properly removed to the district court."  *Id.* at 1084. Thus, this Court has held, in essence, that state law claims falling within the scope of the civil enforcement provisions contained in section 502(a) are completely preempted.[34]

---

[33]  *Id.* at 1315 (holding that plaintiff's claim "falls within the scope of the civil enforcement provision, and hence created removal jurisdiction.").

[34]  In describing the scope of complete preemption as generally including those claims falling within section 502(a), we note that there exists some ambiguity in the caselaw as to whether the scope of complete preemption is limited to only those claims falling within section 502(a)(1)(B), or whether complete preemption encompasses all claims falling within the scope of section 502(a). The Supreme Court's opinion in *Taylor* dealt with a claim that was preempted by section 502(a)(1)(B), and consequently it could be argued that the Court's holding was limited to that subsection. However, the Court appeared to base its conclusion regarding the scope of complete preemption under ERISA on the "explicit direction from Congress" that it found in the legislative history of the statute.  *Taylor*, 107 S.Ct. at 1547.  The Court summarized this

24

Applying this two-prong analysis to the facts of the case *sub judice*, we conclude that the plaintiffs' motion for injunctive relief did not trigger complete preemption. We begin by assuming, *arguendo* only, that the district court was correct in its holding that the motion sufficiently "related to" an ERISA plan to implicate ordinary preemption under section 514(a), thus disposing of the first prong of our analysis. Proceeding to the second

"explicit direction" as indicating that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.* at 1548. Thus, it is potentially unclear whether the Court intended its holding to apply to section 502(a)(1)(B) or to all of section 502(a).

In *Kramer*, we held that the Supreme Court's reasoning, if not its specific holding, in *Taylor* supported complete preemption based on section 502(a)(2). 80 F.3d at 1083. Some courts, however, appear to have limited complete preemption to section 502(a)(1)(B), while others seem to anticipate that complete preemption potentially encompasses the full range of causes of action provided by 502(a). *Compare, e.g., Lupo v. Human Affairs International, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994) (stating that "the § 1109 fiduciary claims discussed by [defendant-appellee] are not the § 1132(a)(1)(B) claims that provide the complete preemption necessary to satisfy the well-pleaded-complaint rule in accordance with [*Taylor*]"), with *Toumajian v. Frailey*, 135 F.3d 648, 654-57 (9th Cir. 1998) (considering the possibility of complete preemption removal based on causes of action authorized by each subsection of section 502(a)). For other examples of the application of complete preemption in the ERISA context, *see, e.g., Rice v. Panchal*, 65 F.3d 637, 640 (7th Cir. 1995); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995), and *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995).

We do not intend our brief discussion of complete preemption to be interpreted as expanding its scope under ERISA. Because it is not essential to the determination of the case *sub judice*, and because it is not clear that there is any persisting conflict between our position and those of our sister circuits, we leave the tasks of further exposition and more precise definition of the scope of complete preemption under ERISA to future cases.

25

prong, we have little difficulty in determining that the plaintiffs' motion for an injunction does not fall within the scope of the civil enforcement provisions of section 502(a). Initially we note that the plaintiffs were not acting as "participants" or "beneficiaries" in seeking injunctive relief;[35] and the motion clearly does not seek to recover benefits or enforce rights under an ERISA plan pursuant to section 502(a)(1)(B).[36] Nor does the motion seek relief for a breach of fiduciary duty,[37] or for violations of the reporting requirements.[38] In sum, the plaintiffs' motion does not appear to assert a claim that falls within any of

---

[35] As discussed above, the underlying class action asserts various state claims involving Mobil's alleged violation of workers' compensation law. As such, this suit implicates the employer-employee relationship and not a relationship dependent upon the existence of an ERISA plan. Or, in other words, this suit is not between traditional "ERISA entities."

[36] It might be argued that because in ruling on the motion a court would necessarily construe the waiver provision, the motion implicitly sought a clarification of rights to future benefits under section 502(a)(1)(B). This argument, however, necessarily fails because the plaintiffs were not acting as "participants" or "beneficiaries" in seeking the injunctive relief that might result in a clarification of future rights. Thus, the plaintiffs' motion for injunctive relief does involve the parties as traditional ERISA entities. Furthermore, we note that our decision in *Hook v. Morrison Milling Co.*, 38 F.3d 776 (5th Cir. 1994), would appear to foreclose the general argument that the construal of a waiver provision contained in an ERISA plan, or executed in partial consideration for benefits under an ERISA plan, gives rise to complete preemption.

[37] *See* 29 U.S.C. § 1132(a)(2).

[38] *See* 29 U.S.C. § 1132(a)(4).

the causes of action provided by section 502(a).[39]

Thus, although the plaintiffs' motion for injunctive relief may "relate to" an ERISA plan, thereby triggering ordinary preemption, we can find no basis for holding that the motion asserted a claim falling within the scope of section 502(a). We therefore hold that the district court erred in concluding that the plaintiffs' motion asserted a claim "arising under" federal law, so as to provide the basis for original jurisdiction necessary to support removal.

IV. Supplemental Jurisdiction over State Claims

The final question posed by the district court is whether it may "now [exercise] supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367." 958 F.Supp. at 283. In determining whether it could properly exercise supplemental jurisdiction over the plaintiffs' state law claims, the district court appropriately considered the four factors enumerated in section 1367(c). 909 F.Supp. at 464. Concluding that the case did not involve novel issues of state law, that the state claims did not predominate over the federal claims, and that there existed no

---

[39] We note that our analysis may seem somewhat terse. Our brevity, however, is occasioned by the failure of the parties to give detailed attention to this issue on appeal. We decline to attempt to anticipate and resolve every possible argument that Mobil could have, but did not, make on appeal. Nonetheless, we have reviewed the provisions of section 502(a) and our caselaw, and it does not appear to us that the plaintiffs' motion falls within any of the causes of action provided by section 502(a), so as to be completely preempted.

27

"other compelling reasons" for declining jurisdiction, the district court held that retaining the state law claims was appropriate. *Id.* The court did not consider the factor stated in section 1367(c)(3), the dismissal of all federal claims, to be relevant because of its holdings regarding complete preemption.

We review the district court's decision to retain jurisdiction over pendent state law claims for abuse of discretion. *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992). Our review is guided by the relevant statutory provisions governing the exercise of supplemental jurisdiction, *see* 28 U.S.C. § 1367(c), as well as the Supreme Court's articulation of the scope and nature of district courts' discretion in exercising jurisdiction over pendent state law claims. *See, e.g., Carnegie-Mellon Univ. v. Cohill*, 108 S.Ct. 614, 618-20 (1988), and *United Mine Workers v. Gibbs*, 86 S.Ct. 1130, 1138-39 (1966).

In the case *sub judice*, it seems appropriate to begin by noting that when all federal claims are dismissed or otherwise eliminated from a case prior to trial, we have stated that our "general rule" is to decline to exercise jurisdiction over the pendent state law claims. *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). This general rule, however, is not always mandatory or absolute. *See Newport Ltd. v. Sears, Roebuck and Co.*, 941 F.2d 302, 307 (5th Cir. 1991). Thus, while our determination that the district court erred in concluding that the case before it

28

included judiciable federal claims provides "a powerful reason to choose not to continue to exercise jurisdiction," *Cohill*, 108 S.Ct. at 619, no single factor is dispositive in this analysis. *Parker & Parsley*, 972 F.2d at 587. Thus, we review the district court's decision in light of the specific circumstances of the case at bar, beginning with the factors enumerated in 28 U.S.C. § 1367(c).[40]

With regard to the first of the section 1367(c) factors, it appears that this case may involve at least one "novel or complex" issue of state law. Although it is not entirely clear from the briefs on appeal, the class claims regarding Mobil's noncompliance with state insurance regulations may raise novel issues both as to the interpretation and applicability of these regulations and as to whether they give rise to a private right of action. Turning to the second and third statutory factors, our analysis above mandates that the only two federal claims alleged, *i.e.*, the complete

---

[40]    28 U.S.C. § 1367(c) provides that

"[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
        (1) the claim raises a novel or complex issue of State law,
        (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
        (3) the district court has dismissed all claims over which it has original jurisdiction, or
        (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "

29

preemption claims, must be "dismissed." Consequently, the state law claims now clearly predominate over the (now nonexistent) federal claims. Finally, we find no "exceptional circumstances" that would make the fourth section 1367(c) factor relevant. Thus, our section 1367(c) analysis results in the conclusion that remand is appropriate.

Furthermore, as noted above, not only have we stated that it is our "general rule" to remand cases when all federal claims are disposed of prior to trial, but the Supreme Court has counseled that the dismissal of all federal claims weighs heavily in favor of declining jurisdiction. *See Gibbs*, 86 S.Ct. at 1139, and *Cohill*, 108 S.Ct. at 619. The Supreme Court has also provided additional guidance regarding review of the discretionary retention of pendent state law claims. In *Cohill*, the Supreme Court discussed the seminal case of *United Mine Workers v. Gibbs*, 86 S.Ct. 1130 (1966), specifically focusing on the considerations appropriate to the exercise of jurisdiction over pendent state law claims after all federal claims had been eliminated from a case. 108 S.Ct. at 618-19. The Court counseled that, pursuant to the reasoning and holding of *Gibbs*, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Cohill*, 108 S.Ct. at

619. The Court went on to state that when a "balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Id.* (footnote and internal citation omitted). Thus, both our "general rule" and the reasoning contained in *Gibbs* and *Cohill* indicate that remand is the correct disposition in the case at bar.

Finally, based on a case presenting issues somewhat analogous to those under consideration here, this Court held that remand was mandated due to concerns of comity and the Congressional intent that cases involving workers' compensation issues be resolved in state courts. In *Jones v. Roadway Express, Inc.*, 931 F.2d 1086 (5th Cir. 1991), we construed 28 U.S.C. § 1445(c), which bars the removal of workers' compensation cases, as indicating that "Congress intended that all cases arising under a state's workers' compensation scheme remain in state court." *Id.* at 1092. Accordingly, after the complete preemption claim asserted by the defendant was eliminated on appeal, we held that "the case *must* be remanded to state court." *Id.* (emphasis added). We concluded that remand was required "in order to satisfy Congress' dictate that, to the extent possible, workers' compensation cases remain in state court." *Id.* On petition for rehearing, we stated that the principal issue on appeal in *Roadway Express* had been "whether to

remand the case to state court when only a state-law claim remained," the question we consider in the case *sub judice*. *Jones v. Roadway Express, Inc.*, 936 F.2d 789, 792 (5th Cir. 1991).[41] We went on to clearly restate our prior holding that "[g]iven the discretion vested in the court to remand pendent state-law claims to state court, we believe that the intent of Congress—that, whenever feasible, state workers' compensation claims be resolved in state court—favors remand to state court." *Id.*[42]

The factors enumerated in 28 U.S.C. § 1367(c), a "balancing" of the *Gibbs* "values" as articulated in *Cohill*, and our holding in *Roadway Express* all lead to the conclusion that this case properly belongs in the state court where it began. We can find no significant factor that would justify retaining jurisdiction rather than remanding, while the statutory, Supreme Court, and circuit law and analyses relevant to review of the case at bar each weigh heavily in favor of declining to exercise jurisdiction over the remaining removed state law claims. Accordingly, we hold that

---

[41] Of course, section 1445(c) applies only to cases commenced in state court, and it does not govern, expressly or by analogy, cases properly commenced in federal court. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994).

[42] We are not suggesting that any of the state law claims in this case are ones "arising under the workmen's compensation laws" of Texas for purposes of section 1445(c). *See Patin v. Allied Signal, Inc.*, 69 F.3d 1 (5th Cir. 1995). Clearly, however, Texas workers' compensation laws are significantly implicated in many of the claims. What we are addressing is, and is only, remand under section 1367(c) and the *Gibbs* and *Cohill* factors.

32

retaining jurisdiction over, rather than remanding, the state law claims in this case would constitute an abuse of discretion.

## Conclusion

Because the district court erred in determining that it had federal question jurisdiction pursuant to complete preemption under the LMRA at the time that it rendered its order, and also erred in determining that it had removal jurisdiction pursuant to ERISA complete preemption, we hold that the district court's continued exercise of jurisdiction would constitute an abuse of discretion. Accordingly, we reverse the district court's denial of plaintiffs' motion to remand and direct the district court, pursuant to our holding herein, to remand the case to the state court from which it was removed.

REVERSED and REMANDED