**Philip RASKIN, Plaintiff,**

v.

**CYNET, INC., Defendant.**

**No. Civ.A. H–00–2356.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 15, 2001.

Danny M. Sheena, Portis & Sheena, Houston, TX, for plaintiff.

Wayne A. Risoli, Chamberlain Hrdlicka White Williams & Martin, Houston, TX, for defendant.

## ORDER

HITTNER, District Judge.

Pending before the Court are Plaintiff's Motion to Remand and Plaintiff's Supplemental Motion to Remand. Having considered the motions, submissions, and applicable law, the Court determines that the motions to remand should be granted.

### I. BACKGROUND

Defendant CyNet, Inc. ("CyNet") hired Plaintiff Philip Raskin ("Raskin") in March 1998. On April 20, 1998, Raskin and CyNet entered into a written stock option agreement ("the agreement").[1] It provided, in pertinent part:

---

1. The relevant agreement is the 1997 Stock Option Agreement. CyNet sent out a Restated Stock Option Plan after Raskin filed the instant suit. Raskin alleges that CyNet sent out the restated plan because it realized

that the prior plan did not qualify as an ERISA plan. By this Order, the Court takes no position on the restated plan's qualification as an ERISA plan. The 1997 Stock Option Agreement was the only plan at issue

You are hereby granted as a key employee of CyNet, Inc. (the "Company"), an option to purchase 15,000 shares of Class A Common Stock, no par value (the "Shares"), of the Company at an option price of $0.39 per share.

Under the agreement, Raskin would vest 25% on each anniversary of his employment and would receive these stocks after CyNet became publicly traded. Raskin's employment with CyNet ceased on July 2, 1999. At that time, his stocks had vested 25% under the agreement. CyNet and Raskin executed a termination agreement under which CyNet was to send Raskin's shares to him as soon as possible. CyNet ultimately became publicly traded, but Raskin never received his shares under the agreement.

On May 2, 2000, Raskin sued CyNet in the 295th Judicial District Court of Harris County, Texas for breach of the stock option agreement as well as fraud and misrepresentation. On July 20, 2000, CyNet removed the case to this Court, asserting that federal question jurisdiction exists because ERISA completely preempts Raskin's state law claims. Raskin now moves to remand. Raskin argues that this Court lacks jurisdiction because the stock option agreement is not an ERISA plan and, thus, ERISA cannot preempt Raskin's state law claims.

## II. Plaintiff's Motions to Remand

### A. Removal Jurisdiction

■ The removing party bears the burden of showing that removal was proper. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988). Pursuant to statute, removal is generally available to the defendant in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" founded on the existence of a claim or right "arising under" federal law. 28 U.S.C. § 1441(a), (b) (1994); *McClelland v.*

when Raskin filed his complaint and, accordingly, is the only document relevant to this

*Gronwaldt,* 155 F.3d 507, 511 (5th Cir. 1998). Federal courts typically ascertain the existence of federal question jurisdiction by applying the well-pleaded complaint rule. *McClelland,* 155 F.3d at 512.

There is a corollary to the well-pleaded complaint rule referred to as the doctrine of complete preemption. *Id.* This doctrine has been used to define limited categories of state law claims that are completely preempted such that any civil complaint raising this select group of claims is necessarily federal in character, no matter how it is characterized in the relevant pleading. *Id.* (citing *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In effect, the application of complete preemption converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. *Id.* Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to federal question jurisdiction and thus may provide a basis for removal. *Id.* The complete preemption doctrine applies to certain claims under ERISA. *Id.*

### B. ERISA Complete Preemption

The first step in the complete preemption analysis is to determine whether the state law claim is subject to "ordinary" preemption under ERISA. *Id.* at 517. This requires an analysis of whether the plaintiff's claims "relate to" an ERISA plan. *Id.; see also* 29 U.S.C. § 1144(a) (1994). The second step is to determine whether the plaintiffs claims fall under the scope of section 502(a), ERISA's enforcement provision. *McClelland,* 155 F.3d at 517; *see also* 29 U.S.C. § 1132 (1994). To evaluate the application of complete preemption in this case, the Court necessarily must first establish whether an ERISA plan exists. *See, e.g., McNeil v. Time Ins. Co.,* 205 F.3d 179, 189 (5th Cir.2000).

matter.

Moreover, the parties agree that the key to this dispute is the existence of an ERISA plan.

## C. ERISA "Plan"

■ ERISA defines the terms "employee benefit plan" or "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3) (1994). Sections 1002(1) and (2) provide the following relevant definitions of an employee welfare benefit plan and employee pension benefit plan:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,

(A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services

(2)(A) Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(1)(A), (2)(A) (1994). Accordingly, the plain language of ERISA's statutory definition provides that a plan must be a welfare and/or pension plan to be an ERISA plan. 29 U.S.C. § 1002(3); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574 (5th Cir.1980); *Kaelin v. Tenneco, Inc.*, 28 F.Supp.2d 478, 483 (N.D.Ill.1998).[2]

## D. The CyNet Stock Option Agreement

CyNet argues that the stock agreement is an ERISA plan because CyNet intended to award Raskin with stock options. Further, because there was a vesting schedule,

**2.** The Fifth Circuit has articulated a test to determine if a plan qualifies as an employee welfare benefit plan. The court must ask whether a plan: (1) exists; (2) falls within a safe harbor provision established by the Department of Labor; and (3) meets ERISA requirements of establishment or maintenance by an employer for the purpose of benefitting plan participants. *McNeil*, 205 F.3d at 189. To satisfy the first prong—i.e., to determine whether a plan exists—the court must determine whether a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedure for receiving benefits. *Id.; Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 (5th Cir.1990) (adopting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)).

Nevertheless, ERISA requires that a plan must first qualify as a welfare and/or pension benefit plan in order to be an ERISA "plan." *See* 29 U.S.C. § 1002(3). Accordingly, in these circumstances it is necessary for the Court to decide as an initial matter whether the CyNet agreement is a welfare and/or pension benefit plan. *See Murphy*, 611 F.2d at 574; *Kaelin*, 28 F.Supp.2d 478, 484–86. Like the district court in Kaelin, the Court believes that this approach is not inconsistent with the Fifth Circuit's "plan" test as articulated above. *See Kaelin*, 28 F.Supp.2d at 485 (stating its belief that the Seventh Circuit would require a plan to have a welfare or pension element to qualify as an ERISA plan).

receipt of benefits would clearly require some kind of administrative procedure. Finally, because Raskin would be able to purchase common stock at a fixed price, CyNet would have to subsidize his purchase indirectly. Raskin argues that the statutory definitions of an ERISA plan do not include stock option agreements such as the CyNet agreement.

As a preliminary matter, the Court notes that the agreement at issue is a stock option agreement, not an employee stock ownership plan ("ESOP").[3] This distinction is relevant to the extent that ESOPs are subject to special provisions under ERISA and have been discussed by the Fifth Circuit on prior occasions. *See, e.g., Matassarin v. Lynch,* 174 F.3d 549 (5th Cir.1999); *Donovan v. Cunningham,* 716 F.2d 1455 (5th Cir.1983).

The Fifth Circuit has not, however, considered whether a stock option agreement such as the CyNet plan is an ERISA plan. *See Long v. Excel Telecomm. Corp.,* No. Civ. A. 3:98–CV3015G, 2000 WL 1562808, at *2–3, (N.D.Tex. Oct.18, 2000) (stating that "[w]hether the [stock option plan] is an ERISA plan is . . . one that the Fifth Circuit has not specifically addressed."). In *Long,* the district court considered a stock option agreement and an ESOP in a suit alleging deprivation of ERISA benefits. *Id.* at *1–2. A key question for the court was whether the stock option agreement and ESOP were in fact ERISA plans. *Id.* at *2. The parties conceded that the ESOP was an ERISA plan. *Id.* Accordingly, the court needed only to determine whether the stock option agreement

was an ERISA plan. *Id. Long*'s analysis is therefore highly instructive in this case.[4]

The *Long* court identified an analogous ERISA case, *Murphy v. Inexco Oil Co.,* 611 F.2d 570 (5th Cir.1980), where the Fifth Circuit discussed whether an employee bonus plan was an ERISA plan. The *Murphy* court stated that Congress, in enacting ERISA, did not "attempt to control every aspect of the employer-employee relationship or every promise made to employees." *Murphy,* 611 F.2d at 574. Recognizing that an ERISA plan must be designed specifically to provide employees with medical, unemployment, disability, death, vacation and other specified benefits or to provide income following retirement to come within the purview of ERISA, the Fifth Circuit concluded that the plan was not an ERISA plan. *Id.* at 574–75.

The *Long* court applied *Murphy* and determined that the stock option plan did not qualify as an ERISA plan. *Long,* 2000 WL 1562808, at *3. First, the stock option plan did not provide medical, unemployment, disability, death, vacation or other benefits so as to be considered an employee welfare benefit plan. *Id.* at *4. Second, the agreement was not an employee pension benefit plan. *Id.* Even though the stock option agreement contained a vesting schedule, it did not provide for systematic deferral of payments to the termination of employment or beyond and was not created for the express purpose of providing retirement income. *Id.* The court therefore determined that the stock option agreement was not an employee benefit plan as defined by ERISA. *Id.* (citing 29 U.S.C. § 1002(1)–(3)).[5]

**3.** CyNet argues that "the plain language of ERISA and Fifth Circuit case law clearly place the CyNet plan within the category of ESOPs covered by ERISA." However, the CyNet plan is expressly identified as a stock option agreement, not an ESOP, and the parties have provided no documentation to contradict this conclusion.

**4.** In addition, the stock option plan at issue in *Long* contained similar features to the CyNet stock option agreement. Both agreements were designed for key employees, contained

options to purchase company stocks, and contained vesting schedules.

**5.** Furthermore, *Long* noted that "the district courts that have considered the question of whether a [stock option agreement] is an employee benefit plan under ERISA have uniformly held that it is not." *Id.* at *4 (citing *Kaelin v. Tenneco, Inc.,* 28 F.Supp.2d 478, 484–86 (N.D.Ill.1998); *Goodrich v. CML Fiberoptics, Inc.,* 990 F.Supp. 48, 49–50 (D.Mass.1998); *Johnson v. TCOM Sys., Inc.,*

This Court arrives at the same conclusion in the instant matter. The CyNet stock option agreement is not a welfare and/or pension plan and, thus, is not an ERISA "plan." *See* 29 U.S.C. § 1002(3). It is not a welfare plan because ERISA enumerates the following benefits in its definition of an employee welfare benefit plan: medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services. 29 U.S.C. § 1002(1)(A). The benefit of an option to purchase stocks is not included in this list and is of a different character than these benefits. *See id.; Murphy,* 611 F.2d at 574. Furthermore, the stock option agreement is not an employee pension benefit plan because it did not include payments that were to be deferred to termination or beyond, nor was it intended to provide retirement income. *See* 29 U.S.C. § 1002(2)(A); *Murphy,* 611 F.2d at 574–75. Rather, the CyNet stock option agreement is akin to an employee bonus plan which falls outside the purview of ERISA. *See Murphy,* 611 F.2d at 574–75.

Consequently, as no ERISA plan exists in this case, ERISA cannot completely preempt Raskin's state law claims. *See McNeil,* 205 F.3d at 189. Accordingly, there is no federal question jurisdiction and no basis for removal. *See McClelland,* 155 F.3d at 517. Remand of Raskin's case to state court is therefore appropriate. *See* 28 U.S.C. § 1447(c). Given the foregoing, the Court hereby

ORDERS that Plaintiff's Motion to Remand and Plaintiff's Supplemental Motion to Remand are GRANTED. This case is REMANDED to the 295th Judicial District Court of Harris County, Texas.

No. Civ. A 89–0311, 1989 WL 517870, at *2–3    (D.D.C.1989)).