IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-11135
_____


RICHARD CASAREZ,

                              Plaintiff-Appellant,

                    v.

BURLINGTON NORTHERN/SANTA FE COMPANY,

                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
October 18, 1999

Before JOLLY, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellant Richard Casarez ("Casarez") appeals the district court's judgment as a matter of law in favor of appellee Burlington Northern/Santa Fe Company ("Santa Fe"). We AFFIRM the district court's grant of judgment as a matter of law on the retaliation issue, REVERSE on the discrimination claim and REMAND for a new trial on the merits.

## I.    Factual and Procedural Background

Casarez, who is Hispanic, had worked at Santa Fe,[1] for 20

_____

[1]    At the time the challenged actions transpired, Casarez was working for The Atchison, Topeka & Santa Fe Railway Company. Subsequently, that entity merged with Burlington Northern. For convenience, we refer to

1

years, receiving positive evaluations and performance-based bonuses, when Santa Fe promoted Casarez to the position of assistant superintendent in Euless, Texas on April 1, 1993. This management job entailed significant responsibilities and made Casarez second-in-command of the North Texas Division. Casarez's February, 1994 performance appraisal stated that he "met expectations," was "very safety motivated," "works long hours as needed," and "has good knowledge of the rules/train operations."

The following month, Santa Fe transferred Ronald Jackson ("Jackson"), Casarez's supervisor, to Illinois; Lewis Rees ("Rees") replaced Jackson as the superintendent of the North Texas Division on March 16, 1994. The next day, Santa Fe posted a notice requesting applications for the job of assistant superintendent in Euless, Texas, a position held on that date by Casarez.

Approximately one week after beginning work in Texas, Rees went on vacation. Instead of leaving Casarez in command, as had been the practice under Jackson, Rees brought in an assistant superintendent from Houston.[2]

On March 31, 1994, fifteen days after Rees replaced Jackson as superintendent, Rees drafted a memorandum criticizing Casarez's performance and purporting to place him on probation.

Casarez's former employer as "Santa Fe."

[2] The district court sustained Santa Fe's objection to Casarez's attempt to show that the assistant superintendent from Houston, Mr. Hopper, was Caucasian.

Rees never showed this memorandum to Casarez, and, although he deposited the memorandum in Casarez's personnel file, Rees never placed Casarez on probation; indeed, Rees never gave Casarez any written or verbal warning before firing him on April 25, 1994.

On April 1, 1994, the Alliance facility opened. Alliance was a $100,000,000 state-of-the-art train yard in which Santa Fe consolidated a number of its operations in North Texas. Though he was second-in-command of the North Texas Division, Casarez was not on the Alliance planning committee, and Rees barred him from the safety committee. Moreover, Santa Fe did not move Casarez's computer to Alliance; when Casarez tried to use his subordinate's computer at Alliance, Rees told him to work elsewhere.

During the opening days of Alliance, Rees sent Casarez on a number of peculiar assignments. He directed Casarez to watch workers fix a sunkink-something about which Casarez knew little and had no authority to manage-on the very night Alliance opened. Rees dispatched Casarez to inspect the backs of chairs to ensure that they were safe to sit on. And Rees told Casarez to travel to Dallas to watch workers repair a derailment on a spur track. Additionally, though none of the other assistant superintendents worked shifts, Rees ordered Casarez to work nights. Further, and unlike other assistant superintendents, Rees required Casarez to stay on his shift until someone relieved him.

Rees then transferred Casarez to Zacha Junction, where

Casarez's mandate was to speed up the departure of the trains. Though the train cars must be in a particular order when they carry hazardous materials, Casarez found that the lists provided to him of the train cars were repeatedly incorrect, a problem whose repair necessitated additional time-consuming labor.

On April 18, 1994, Casarez complained of race discrimination to Carol Beerbaum, who worked in Santa Fe's Human Resources department. That same day, Rees and Audrey Rierson ("Rierson") confronted Casarez about a "blue flag" violation. A blue flag on a train designates that workers are on, under or between moving parts, and that the train cannot be moved except in certain circumstances. Neither Rees nor Rierson could tell Casarez the date, engine or train on which this alleged violation occurred, but Casarez thought they might be referring to an incident involving train T-ALLA-1-14 on April 14, 1994. Upon reviewing that train's records, Casarez ascertained that no blue flag had been requested. When Casarez reported this to Rierson, Rierson told him not to worry because there had never been a blue flag.

Casarez was due to be promoted on April 24, 1994. The following day, Rees fired Casarez. Rees told Casarez that he was firing him for three reasons: (1) a lack of leadership skills and poor attendance during the opening of Alliance; (2) the "blue flag" violation; and (3) complaints Rees received about Casarez's conduct at Zacha Junction.

Casarez filed suit in the Western District of Texas in April, 1996.  Pursuant to Santa Fe's motion, the court transferred venue to the Northern District of Texas.  The district court held a trial on September 8 and 9, 1997.  At the close of Casarez's case-in-chief, the district court granted Santa Fe's Federal Rule of Civil Procedure 50(a) motion for judgment as a matter of law.

Casarez timely filed his appeal.

## II.    Standard of Review

We review de novo a district court's decision to grant judgment as a matter of law pursuant to Rule 50(a).  See Murray v. Red Kap Indus., 124 F.3d 695, 697 (5th Cir. 1997).  Judgment as a matter of law is proper where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party."  Fed. R. Civ. Proc. 50(a)(1).  Of course, "we view the entire trial record in the light most favorable to the non-movant, drawing reasonable inferences in its favor."  Burch v. Coca-Cola Co., 119 F.3d 305, 313 (5th Cir. 1997).

We test the sufficiency of the evidence under the standard enunciated in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969) (en banc), overruled on unrelated grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 336-38 (5th Cir. 1997) (en banc), which is the same standard the district court employs. See Atkin v. Lincoln Property Co., 991 F.2d 268, 270 (5th Cir. 1993).

5

Under Boeing, "[t]here must be a conflict in substantial evidence to create a jury question."  411 F.2d at 375.  Substantial evidence is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."  Id. at 374; see also Krystek v. University of S. Mississippi, 164 F.3d 251, 255 (5th Cir. 1999).

### III.    Race Discrimination Claims

Under the McDonnell Douglas-Burdine framework,[3] the parties dance an adversarial three-step, in which: (1) the plaintiff proves his prima facie case by a preponderance of the evidence; (2) the defendant rebuts the presumption of intentional discrimination arising from the prima facie case by articulating legitimate, non-discriminatory reasons for the challenged action; and (3) the plaintiff counters by offering evidence that the legitimate, non-discriminatory reasons are really a pretext for discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-08 (1993); see also Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 992 (5th Cir. 1996) (en banc); Walton v. Bisco Indus., Inc., 119 F.3d 368, 370 (5th Cir. 1997).

In Rhodes, we held that even if a plaintiff offered evidence of pretext, a verdict in his favor would still be subject to

---

[3]     Though Casarez has asserted claims under both Title VII and 42 U.S.C. § 1981, "the elements of both claims are identical."  Anderson v. Douglas & Lomason Co., Inc., 26 F.3d 1277, 1284 n.7 (5th Cir. 1994). "Therefore, we employ only one analysis in evaluating the [appellant's] Title VII and § 1981 claims."  Id.

6

sufficiency of the evidence review. 75 F.3d at 993. We distilled this holding in the following two prong test: whether "the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a [motivating] factor in the actions of which the plaintiff complains." Id. at 994.

The district court acknowledged that Casarez proved his prima facie case by a preponderance of the evidence. Santa Fe, in turn, carried its burden by articulating, in the pre-trial order, three legitimate, non-discriminatory reasons for firing Casarez: (1) Casarez's poor leadership and absences from work; (2) the "blue flag" incident; and (3) complaints Rees received about Casarez's work at Zacha Junction. At that point in the case, the presumption of intentional discrimination arising from Casarez's prima facie case disappeared. But Casarez offered evidence of pretext. First, he claimed he was not absent from work during the opening days of Alliance; on the contrary, he testified that he worked 10 and 12 hour days. Though Rees did not see Casarez, had he needed him, Rees could have contacted Casarez by radio, beeper or telephone, but he did not. Moreover, Casarez argued that he had no chance to demonstrate leadership, as Rees refused to leave Casarez in charge while he was on vacation, and because Rees assigned him menial tasks to perform.

7

Second, Casarez argues that the "blue flag" incident never happened. Casarez testified that he never saw a blue flag on the train. He further testified that records required to be kept by federal law revealed that no one requested a blue flag on the train. Additionally, he insists that despite the absence of the blue flag, he never ordered the trains to move.

Finally, Casarez maintains that he had no altercations with workers at Zacha Junction. Rees never told him that complaints had been made about him, and no investigation ever occurred. In short, Casarez has offered evidence sufficient to show that Rees could not have been motivated by the reasons he gave for firing Casarez because those reasons were groundless. We therefore hold that Casarez has met the first prong of the Rhodes inquiry.

We now consider whether the evidence creates an inference that race was a motivating factor in Santa Fe's firing of Casarez. We have held that "[t]he evidence necessary to support an inference of discrimination will vary from case to case. A jury may be able to infer discriminatory intent in an appropriate case from substantial evidence that the employer's proffered reasons are false." Rhodes, 75 F.3d at 994. Just as evidence of pretext coupled with evidence of Rhodes' skill as a salesman satisfied this prong in Rhodes, see 75 F.3d at 996, Casarez has surmounted this hurdle with evidence that Santa Fe's stated reasons for firing him were false coupled with his own good work

8

record.  However, even if Casarez's showing in this regard were not sufficient, a further consideration of all the facts viewed in a light most favorable to Casarez would likewise satisfy the intent inquiry.  In addition to showing that Santa Fe's articulated reasons were false, Casarez also showed that he was subjected to multiple instances of being treated differently from similarly situated Caucasian assistant superintendents: he was assigned menial tasks, he was forced to work nights, he was not permitted to leave work until he was relieved by someone else, he was not permitted to take time off to visit his ailing mother in El Paso, he was ostracized from the planning committee for Alliance and from the safety committee, and he was transferred to Zacha Junction where he was isolated from his subordinates.  Moreover, and significantly, Rees appeared to desire Casarez's departure from the very beginning of their working together.  The day after Rees began work, Santa Fe posted as open a job meeting the description and location of Casarez's.  Rees told Casarez to "fix [his] English," when viewing a report Casarez prepared on which nothing was incorrect.  And on March 31, 1994, before any of Casarez's alleged job failings manifested, Rees drafted a memorandum chastising Casarez and purporting to place him on probation.  Finally, the key figure in firing Casarez, Rees, was Caucasian, and Casarez's replacement, Marc Stephens, was also

9

Caucasian.[4]  These facts taken together are sufficient to allow a reasonable jury to draw the  inference that Rees was motivated by race when he fired Casarez.

Because we find that Casarez had offered proof sufficient to create a fact issue as to whether Rees was actually motivated by the reasons he articulated for firing Casarez, and further that these facts create a reasonable inference that race was a motivating factor in Rees' decision to fire Casarez, we hold that the district court erred when it granted Santa Fe's Rule 50(a) motion for judgment as a matter of law as to the Title VII and § 1981 discrimination claims.  We therefore remand for a new trial on the merits.

---

[4]     Casarez sought to introduce evidence proving: (1) that he was the only Hispanic manager in his division; (2) that the man who replaced Marc Stephens (and the man who replaced the replacement) were Caucasian; (3) that, between 1993 and 1995, assistant superintendent positions company-wide increased from 27 to 48, but the number of Hispanics filling those jobs decreased from 5 to 0; and (4) that Santa Fe's upper management is wholly Caucasian.  The district court sustained Santa Fe's objections to each of these proffers.

Because we remand for a new trial on other grounds, the outcome of this case does not turn on the propriety of these evidentiary rulings, and we do not reach that question.  Nevertheless, we observe that "[p]roof that [a] work force was racially balanced or that it contained a disproportionately high percentage of minority employees is not wholly irrelevant on the issue of intent[.]" Furnco Constr. Corp. v. Waters, 438 U.S. 567, 580 (1978) (Rehnquist, J.).  The inverse proposition–proof of racial imbalance or a dearth of minorities is not wholly irrelevant to intent–is likewise true.  See Walls v. Mississippi State Dept. of Pub. Welfare, 730 F.2d 306, 316 (5th Cir. 1984) (taking into account that "[t]he racial composition of classified positions requiring the educational minimums was primarily white"); Pouncy v. Prudential Ins. Co. of America, 558 F.2d 795, 802 (5th Cir. 1982) ("[W]e may infer racial discrimination if gross statistical disparities in the composition of an employer's work force can be shown.").  We emphasize that this is a disparate treatment–not disparate impact–case, and that Casarez is not trying to use evidence of racial composition to make his prima facie claim.  Rather, he is trying to demonstrate that an inference of racial discrimination is reasonable.  Evidence of Santa Fe's racial composition is relevant to that endeavor.

10

## IV.    Retaliation Claim

To establish a prima facie case of retaliation, Casarez must show: (1) that he engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the participation in the protected activity and the adverse employment action.  See Holt v. JTM Indus., 89 F.3d 1224, 1225-26 (5th Cir. 1996).  Casarez must demonstrate that, but for the protected activity, he would not have confronted the adverse employment action.  Long v. Eastfield College, 88 F.3d 300, 305 n.4 (5th Cir. 1996).

Casarez's complaints to the EEOC and subsequent suit are protected activity, a point Santa Fe does not dispute.  Casarez alleges that, as a result of his protected activity, Santa Fe refused to rehire him for management positions.  Santa Fe counters, and we agree, that Casarez has failed to demonstrate the existence of a causal link between the protected activity and the adverse employment action.  Though Casarez presented evidence from a human resources manager that Santa Fe will not rehire or promote people who make complaints of race discrimination, her testimony was hearsay, and Casarez has failed to proffer any evidence that would support the existence of an official or de facto policy of refusing to rehire employees who make complaints of racial discrimination.  Moreover, Casarez failed to identify the individuals responsible for hiring those management positions

11

for which he applied; Casarez has not even shown that they were aware that Casarez engaged in protected activity. We therefore hold that the district court did not err when it granted judgment as a matter of law to Santa Fe on the retaliation claim.

## V.     Transfer of Venue

Casarez additionally appeals the order transferring venue from the Western District of Texas to the Northern District of Texas. A transfer of venue is appropriate where it is convenient for the parties and witnesses, and where the interests of justice so require. 28 U.S.C. § 1404(a). "A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." Peteet v. Dow Chemical, 868 F.2d 1428, 1436 (5th Cir. 1989); see also United States v. Gonzalez, 163 F.3d 255, 259 (5th Cir. 1998). Here, the district court considered the following factors that favored transferring the venue: (1) the challenged action occurred in Tarrant County; (2) the majority of fact witnesses lived closer to Fort Worth than to El Paso; (3) Santa Fe has its headquarters in Fort Worth; (4) Casarez's personnel files are in Fort Worth; (5) Casarez has a home in Grapevine where his wife and children live. The district court further observed that Casarez's choice of forum was an important consideration, but concluded that the other factors outweighed it in this case. We hold that the district court did not abuse its discretion, and we affirm its

12

transfer of venue.

## VI.    Conclusion

We hold that a fact issue sufficient to present to the jury exists as to whether Rees' articulated reasons for firing Casarez were merely a pretext for discrimination.  We therefore REVERSE the district court's grant of judgment as a matter of law on the discrimination claim and REMAND for a new trial on the merits.

We further hold that Casarez failed to introduce evidence sufficient to create a fact issue on the question of whether Santa Fe retaliated against him.  We therefore AFFIRM the district court's grant of judgment as a matter of law on the retaliation issue.

Finally, we AFFIRM the district court's transfer of venue.

PARTIALLY REVERSED, PARTIALLY AFFIRMED, and REMANDED.

13