REVISED AUGUST 1, 2001

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-11242

_____

BURKHART GROB LUFT UND RAUMFAHRT GMBH & CO. KG,

Plaintiff-Appellant-Cross-Appellee,

v.

E-SYSTEMS, INC.,

Defendant-Appellee-Cross-Appellant.

_____

Appeals from the United States District Court
For the Northern District of Texas

_____

July 20, 2001

Before DAVIS, WIENER and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Burkhart Grob Luft und Raumfahrt GmbH & Co. KG ("Grob") sued E-Systems, Inc. ("E-Systems") for breach of contract, breach of a duty of good faith and fair dealing, tortious interference with a prospective business opportunity, and fraud arising out of the efforts of the two companies to win a government contract. A jury found for Grob on the fraud claim alone and awarded Grob $1 in actual damages and $45 million in punitive damages. The district court vacated the award of punitive damages and entered a judgment for Grob in the amount of $1. Grob now appeals, raising several issues with respect to its damages on the fraud claim. E-Systems

cross-appeals, contesting the jury's fraud finding.  Finding no error, we affirm the district court's judgment in all respects.

I.

This case grows out of a program of the Advanced Research Projects Agency and the Defense Airborne Reconnaissance Office (together, "ARPA"), both agencies of the United States Department of Defense, to build a high-altitude, long-endurance, unmanned surveillance aircraft.  The program, known as Tier II+, required production of both an aircraft and a ground station, which would be used to control the aircraft in flight and to receive the data from its various sensors.

The Tier II+ program had four phases.  After soliciting interest from contractors, ARPA would choose five proposals for funding in Phase 1.  The various contractors selected for Phase 1 would receive funding to produce a detailed design for a prototype aircraft and ground station.  The amount to be awarded in Phase 1 was insufficient to allow the contractors to earn a profit.  In Phase 2, ARPA would select two of the five contractors chosen in Phase 1.  The two contractors selected for Phase 2 would produce and test a prototype aircraft and ground station.  In Phase 3, ARPA would select one of the two contractors participating in Phase 2. The winning contractor selected in Phase 3 would further refine and test their design and produce a number of demonstration aircraft and ground stations.  In Phase 4, the winning contractor would produce a larger number of operational aircraft and ground

-2-

stations, the ultimate number to be determined by congressional appropriations.

ARPA set out various performance goals for the aircraft and ground station. However, none of the performance goals were fixed requirements. ARPA advised potential bidders that they could trade off various goals against others. The only fixed requirement ARPA set out was that the final production aircraft have a price not greater than $10 million.

Grob is a German company that specializes in manufacturing aircraft from composite materials. It has manufactured a number of glider and propeller-driven aircraft, some of which have set world records for high altitude flight. However, it has never manufactured a jet aircraft. E-Systems is an American defense contractor specializing in aerial surveillance technology, military communications, and systems integration. E-Systems is organized into several discrete divisions, two of which, the Greenville division and the Melpar division, are involved in this case.

During the 1980s Grob and E-Systems together developed and built an aircraft called the Egrett for the West German government. The Egrett was a manned, propeller-driven aircraft designed to fly at 50,000 feet with an ability to stay at that altitude for 6 to 10 hours. Though a technical success, the Egrett never went into production after the collapse of East Germany, the surveillance of which was the main mission of the Egrett. However, the two companies signed an agreement to work together to develop and sell

the Egrett to other customers who might be interested in such an aircraft.

In early 1994 Grob learned, through its consultant A.C. Williams, about the Tier II+ program. Grob approached E-Systems about working together to submit a bid to ARPA. E-Systems initially rebuffed Grob's advances. Though the Egrett had been a technical success, animosity apparently developed between the two companies towards the end of the Egrett project. Furthermore, E-Systems did not think that Grob could build the sort of aircraft that ARPA would want, namely one that had jet propulsion. Retired Brigadier General Lawrence Mitchell, an E-Systems employee, had discussed the Tier II+ program with Major General Ken Israel, the head of the Defense Airborne Reconnaissance Office. Based on those discussions, Mitchell told his superiors at E-Systems that ARPA would likely want a jet aircraft, which Grob had never before produced.

E-Systems changed its mind about working with Grob on the Tier II+ project in April of 1994. Klaus Fischer of Grob arranged a demonstration of the Egrett in Germany for Harry Berman, a senior ARPA official. Ernest Pennington of E-Systems attended the demonstration and reported that Berman was "wowed" by the Egrett and was considering offering Grob a contract right then and there. Pennington reported these events and recommended that E-Systems seek to, "keep Grob in our camp as long as possible." Shortly thereafter Brian Cullen, the general manager of E-Systems'

Greenville division, proposed to Grob that the two companies work together on the Tier II+ program.

The two companies agreed that E-Systems, because of its experience with U.S. defense contracts, would have responsibility for drafting the bid to be submitted to ARPA. Executives from the two companies met in Greenville, Texas in early May, 1994 to plan their bid for the Tier II+ project. At that meeting, Alan Doshier, an E-Systems executive, mentioned that the Melpar division of E-Systems would be working with Teledyne-Ryan, an American defense contractor, on another Tier II+ bid. It is not clear just what Doshier said about Melpar's involvement to the Grob executives, who were insisting that E-Systems work with Grob exclusively. Grob executives, principally Klaus Fischer, continued to insist that Grob and E-Systems work with each other exclusively. Dutch Meyer of E-Systems evidently assured the Grob executives that E-Systems would work with Grob exclusively. Burkhart Grob, the owner of Grob, finally settled the issue of exclusivity in a letter to Brian Cullen on June 23, 1994. Grob insisted that the relationship between his company and E-Systems be exclusive. Cullen agreed to exclusivity in his reply to Grob's letter.

While the two companies were settling the issue of exclusivity, they were also continuing to work on the design of the aircraft to be included in their proposal to ARPA. At a meeting in Germany, Peer Frank, Grob's chief engineer, presented proposals for both a modified Egrett aircraft and an entirely new jet. The Grob

executives left the meeting in Germany with the understanding that the proposal would include both the modified Egrett and the new jet design. However, E-Systems made only cursory mention of the new jet design in the final proposal to ARPA. Furthermore, E-Systems never informed Grob of Mitchell's conclusion regarding ARPA's likely preference for a jet aircraft.

Fourteen groups submitted proposals for Phase 1 of the Tier II+ program. The Grob/E-Systems bid was not among the five bids picked for Phase 1. The winning bids came from such companies as Loral, Northrup Grumman, Westinghouse, Raytheon, and Lockheed. One of the winning bids was submitted by Teledyne-Ryan and the Melpar division of E-Systems. The Teledyne-Ryan/Melpar bid was later chosen as one of the two participants in Phase 2, and later won the final competition by being picked as the sole participant in Phase 3 of the program.

## II.

Aggrieved that it had lost, and that another division of E-Systems had won when E-Systems had promised it exclusivity, Grob sued E-Systems in August of 1995. Grob asserted that E-Systems' failure to honor its agreement to work with Grob exclusively, its failure to share information about ARPA's desire for a jet, and its failure to include Grob's plans for a new jet aircraft in the final proposal to ARPA constituted breach of contract, breach of a duty of good faith and fair dealing, tortious interference with a prospective business opportunity, and fraud.

The district court tried the case to a jury. After the close of all the evidence, the district court decided that it would not submit the issue of Grob's lost profits to the jury because they were too speculative and uncertain. Thus, the jury form instructed the jury to consider only Grob's bid preparation costs as actual damages for the various claims it asserted. The jury found for Grob on its fraud claim and for E-Systems on the remainder of Grob's claims. The jury awarded Grob $1 in actual damages and $45 million in punitive damages.

Following the jury's verdict, Grob moved to have the district court impose a constructive trust on E-Systems' profits from the Tier II+ program. The district court denied Grob a constructive trust on the grounds that E-Systems had not been unjustly enriched at Grob's expense. The district court found that Grob's failure to advance in the Tier II+ program was not attributable to E-Systems' actions, and therefore Grob had no interest in E-Systems' profits in the Tier II+ program. E-Systems moved for judgment as a matter of law on the fraud claim and for vacatur of the award of punitive damages. The district court vacated the punitive damages award on the grounds that Texas law did not allow for an award of punitive damages when actual damages were merely nominal. The district court denied E-Systems' motion for judgment as a matter of law and entered judgment for Grob in the amount of $1.

Grob now appeals, raising four issues. Grob argues that: 1) the district court erred in not submitting the issue of its lost

profits to the jury, 2) the district court erred in not imposing a constructive trust on E-Systems' profits from the Tier II+ program, 3) the district court erred in not awarding Grob all of its bid preparation expenses as actual damages, and 4) the district court erred in vacating the award of punitive damages in light of the fact that Grob should have been awarded substantial actual damages. E-Systems cross-appeals, arguing that the evidence was insufficient to support the jury's fraud finding.

## III.

We begin with the district court's decision not to submit the issue of Grob's lost profits to the jury. Whether Grob produced sufficient evidence to present the question of its lost profits to the jury is a question we review de novo. Casarez v. Burlington Northern/Santa Fe Co., 193 F.3d 334, 336 (5th Cir. 1999). In determining whether Grob was entitled to have the jury consider its claim for lost profits, we review the entire record in the light most favorable to Grob, drawing reasonable inferences in its favor and not making determinations about credibility or the weight of the evidence. Id. Grob is entitled to have the question of its lost profits put to the jury only if there is a conflict in substantial evidence. Id.

Texas law requires that lost profits be established with reasonable certainty. Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc., 877 S.W.2d 276, 279-80 (Tex. 1994). Both the fact of lost profits, and their amount, must be established with reasonable

-8-

certainty.  Id.; Lovelace v. Sabine Consol., Inc., 733 S.W.2d 648, 655 (Tex. App. - Houston [14th Dist.] 1987, writ denied).  A plaintiff's failure to show either the existence or the amount of lost profits will necessarily prevent their recovery.

The requirement of reasonable certainty is a flexible one, demanding a sensitivity to the facts of a particular case.  Texas Instruments, 877 S.W.2d at 279.  Where lost profits, in an amount shown with reasonable certainty, are the natural and probable consequence of the wrong complained of, then they may be recovered.  Id.  Texas law does provide some guidance on what constitutes reasonable certainty.  The Texas Supreme Court has said that,

> Profits which are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise, cannot be recovered. Factors like these and others which make a business venture risky in prospect preclude recovery of lost profits in retrospect.

Id.  Following this guidance, the Texas courts, and our court in its application of Texas law, have consistently required persuasive evidence that a new or speculative business venture had a good chance of succeeding to allow a plaintiff to recover lost profits in a case arising out of that new or speculative venture.  See, for example, Aboud v. Schlichtemeier, 6 S.W.3d 742, 747 (Tex. App. - Corpus Christi 1999, no writ); Ishin Speed Sport, Inc. v. Rutherford, 933 S.W.2d 343, 351-52 (Tex. App. - Ft. Worth 1996, no writ); Dyll v. Adams, 167 F.3d 945, 947-48 (5th Cir. 1999); DSC

<u>Communications Corp. v. Next Level Communications</u>, 107 F.3d 322, 329 (5th Cir. 1997). Furthermore, the Texas courts have denied recovery to a disappointed bidder who could not show that they would have received the contract in dispute absent the wrongful conduct of the defendant. <u>Lovelace</u>, 733 S.W.2d at 656.

Grob has produced no evidence that would allow an award of lost profits in this case. If E-Systems had not committed fraud in the Tier II+ competition, then presumably Grob would have been able to work with E-Systems exclusively, would have submitted a bid on its own, or would have teamed with another contractor to submit a bid. However, the fact remains that ARPA wanted a jet aircraft for this project, which Grob had never built. ARPA's only firm requirement for the project was that it cost no more than $10 million per copy at the final production stage. Grob would have faced an uphill battle in persuading ARPA that its newly designed jet aircraft that had never been built or tested could meet ARPA's firm cost requirements. Finally, to have any chance of making a profit in this project, Grob was required to show that it would have been a successful bidder in both Phase 1 and Phase 2. To be successful in Phase 2, the first phase when the project was profitable, Grob was required to show that it would likely prevail over 12 of the other bidders on the Tier II+ project. These included such experienced contractors as Lockheed, Loral, Raytheon, and Northrup Grumman.

In the face of these substantial obstacles, Grob submitted no

evidence to support its contention that it would have been the winner in the Tier II+ program absent E-Systems' fraud. Grob did produce the materials it provided to E-Systems at the meetings the two companies held to discuss their joint bid. These materials include a preliminary design for a new jet aircraft. However, Grob produced no evidence that this design would have likely found favor with ARPA, that it could have been produced within ARPA's cost requirements, or that it would have proved superior to the designs submitted by the other bidders. Grob also produced no evidence that any other design it could have conceived would have had any success. In sum, no matter how badly E-Systems might have behaved, Grob produced no evidence that it was likely to find success in the Tier II+ program.

These facts serve to distinguish the cases Grob cites in support of an award of lost profits in this case. In Aboud, the Texas Court of Appeals sustained an award of lost profits in a case arising out of a proposal to build a cancer treatment center in El Paso. The evidence in Aboud showed that the partners were experienced physicians, that they had developed such enterprises in the past, that El Paso needed such a treatment center, and that such a center was likely to be quite profitable. Aboud, 6 S.W.3d at 747. Grob had no similar experience in building jet aircraft, and the market in which Grob was to compete - the Tier II+ competition - was not nearly as favorable to Grob. Grob simply did not have the same prospects for success as had the partners in

<u>Aboud</u>.

In <u>DSC Communications</u>, our court sustained an award of lost profits to a company that had sued a competitor for misappropriation of trade secrets. The company was awarded lost profits based on its lost sales of a new telecommunications product. The evidence tended to show that the plaintiff was an experienced developer of telecommunications products and that the product in question was based on a product that had previously been a success. <u>DSC Communications</u>, 107 F.3d at 329. Grob has no similar history of success in producing jet aircraft, and presumably it would have submitted an entirely new, untested design. Furthermore, Grob was not competing in an open market, but rather for a single government contract. Grob is simply in a different position than was the plaintiff in <u>DSC Communications</u>. Indeed, we have previously distinguished <u>DSC Communications</u> on grounds very similar to those presented in this case. <u>Dyll</u>, 167 F.3d at 948.

Because Grob did not produce evidence that would have allowed the jury to award it lost profits with reasonable certainty, the district court correctly declined to submit this question to the jury.

### IV.

We turn next to Grob's contention that the district court should have imposed a constructive trust over E-Systems' profits from the Tier II+ project. Under Texas law, a constructive trust

-12-

is an equitable remedy available to a party that has been defrauded. Meadows v. Bierschwale, 516 S.W.2d 125, 128 (Tex. 1974). Because a constructive trust is an equitable remedy, the decision whether to impose it is entrusted to the discretion of the district court, and we review the district court's decision only for an abuse of discretion. Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 284 (5th Cir. 1999); Marine Indem. Ins. Co. of America v. Kraft Gen. Foods, Inc., 115 F.3d 282, 287 (5th Cir. 1997).

The required elements for imposition of a constructive trust under Texas law are: 1) actual or constructive fraud, 2) unjust enrichment of the wrongdoer, and 3) tracing of the property over which the trust is placed to some identifiable res in which the plaintiff has an interest. Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 437 (5th Cir. 1994); Monnig's Dep't. Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig's Dep't. Stores, Inc.), 929 F.2d 197, 201 (5th Cir. 1991).

Based on the record evidence produced at trial, the district court found Grob failed to establish that its aircraft, "would have met ARPA's Phase 1 requirement regardless of what E-Systems disclosed or failed to disclose." The district court further found that Grob had shown no, "legitimate interest in [E-Systems'] profits because there is no evidence that it had a realistic expectancy of winning the...bid." As explained above, these findings are consistent with the jury verdict and fully supported

-13-

by the record. Based on these findings, the district court concluded that E-Systems was not unjustly enriched at the expense of Grob and that Grob had no interest in E-Systems' profits from the Tier II+ project.

The district court did not abuse its discretion in reaching these conclusions and in declining to impose a constructive trust. Concerning the unjust enrichment element, as we explained above, Grob presented no evidence that it would have had any success in the Tier II+ competition even absent E-Systems' fraud. Though E-Systems' fraud may have prevented Grob from teaming with another contractor, or submitting a bid on its own, or being the only company to have teamed with E-Systems, there is no evidence to suggest that Grob would have been successful even in Phase 1 of the Tier II+ competition. There are no profits Grob would have earned but for E-Systems' fraud.[1] The district court thus correctly concluded that Grob has no interest in the property, namely E-Systems' profits, over which it seeks a constructive trust.

This conclusion is consistent with the manner in which the Texas courts have imposed constructive trusts. Texas courts have

_____

[1]Grob relies on <u>Eden Hannon & Co. v. Sumitomo Trust & Banking Co.</u>, 914 F.2d 556 (4th Cir. 1990), where the Fourth Circuit held that a constructive trust should have been imposed over the profits the winning bidder made on certain assets it purchased at auction in favor of the third place bidder. However, that conclusion was premised on the fact that the winning bidder only won because it violated a confidentiality agreement it had with the third place bidder and misappropriated its trade secrets. That is not the situation in the case before us.

-14-

imposed constructive trusts where one party has obtained some discrete piece of property in which the plaintiff has an interest - such as a piece of real estate, the assets of a failed bank, or an oil and gas lease - in a wrongful manner. See Ginther v. Taub, 675 S.W.2d 724, 725 (Tex. 1984) (oil and gas lease); Meadows, 516 S.W.2d at 127 (apartment property); Lone Star Partners v. Nationsbank Corp., 893 S.W.2d 593, 595 (Tex. App. - Texarkana 1994, writ denied) (assets of a failed bank). No cases from the Texas courts concern a situation such as the one presented by this case, where one party seeks the profits of another party, and where such profits arise from expertise the aggrieved party does not possess. Thus, the district court was well within its discretion in refusing to order a constructive trust in this case.

## V.

Grob argues finally that the district court should have awarded it all of its bid preparation costs on the Tier II+ project. However, Grob's witness Klaus Fischer admitted that the figure he gave for bid preparation expenses included amounts expended before Grob ever began working with E-Systems and that he had no way of separately calculating what Grob spent after it began working with E-Systems. R., Vol. 11 at 490-91. Thus, the jury was well within its rights to award Grob only $1 in actual damages in light of this uncertainty in the evidence.

As the district court correctly refused to submit the issue of Grob's lost profits damages to the jury and also did not abuse its

discretion in not ordering a constructive trust over E-Systems'
profits on the Tier II+ project, the district court correctly
vacated the punitive damages award.  See Peter Scalamandre & Sons,
Inc. v. Kaufman, 113 F.3d 556, 564 (5th Cir. 1997).

We turn finally to E-Systems' cross-appeal.  Our review of the
record and the applicable law convinces us that there was
sufficient evidence to support the jury's finding that E-Systems
committed fraud.

## VI.

The district court properly refused to submit Grob's lost
profits damages to the jury, and did not abuse its discretion in
refusing to order a constructive trust over E-Systems' profits on
the Tier II+ project.  Because the record evidence supports the
jury's award of only nominal actual damages, the district court
also properly vacated the jury's punitive damages award.  Our
review of the record persuades us, however, that the evidence was
sufficient to sustain the jury's verdict that E-Systems committed
fraud.  The judgment of the district court is therefore AFFIRMED.
AFFIRMED.