IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-20477

Summary Calendar

_____

LYNETTE BRADFORD

     Plaintiff - Appellant

v.

GEISSEL BARKER & LYMAN INC; STEVE ARNOLD

     Defendants - Appellees

_____

Appeal from the United States District Court
for Southern District of Texas
H-00-CV-4055

_____

January 22, 2003

Before KING, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    This appeal requires us to review whether the district court erred in granting summary judgment in favor of the defendants on the plaintiff's Title VII retaliation claim and in declining to exercise supplemental jurisdiction over the plaintiff's state law claim for assault and battery. Upon review, we affirm.

---

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS and PROCEDURAL HISTORY

Plaintiff Lynette Bradford worked as a legal secretary for the law firm of Giessel, Barker & Lyman, Inc. ("GB&L") from January 1995 until early April 1999. In February 1999, Bradford applied for a part-time position as a legal secretary with the law firm of Ireson & Weizel. Ireson & Weizel offered her the position on March 23, 1999. On this same date, Bradford presented a resignation letter to GB&L's office manager, Cindy Bucek, in which she stated that:

> Due to continuing health problems and by the advice of my physician, it has been recommended that I cut down on my hours. Therefore, it is with great regret that I must resign my full-time position at Giessel, Barker & Lyman. My last day will be April 6, 1999.
>
> I have enjoyed working here and hope the firm will keep me in mind for any contract positions or temporary assignments that may arise. Thank you for your attention to this matter.

During a meeting between Bradford and Bucek regarding Bradford's resignation, Bradford told Bucek that Steve Arnold, the attorney Bradford had been assigned to work with since October 1998, had been sexually harassing her for the past seven weeks.[1] In response, Bucek told Bradford that GB&L would take immediate action by moving her desk, investigating the matter by talking to

---

[1] Bradford admits that prior to this meeting, she had never formally complained about Arnold's alleged harassment toward her, nor had she talked to any official or shareholder at GB&L informally regarding the alleged harassment.

Arnold, and having one of the firm's shareholders talk to Bradford about the allegations.

After the meeting ended (late in the afternoon), Bucek discussed Bradford's allegations with Gregg Weinberg, one of the firm's shareholders. Weinberg was unable to reach Arnold on this date (March 23, 1999) because Arnold had left for the day and was also unable to reach Arnold the next day because Arnold was out of the office for a deposition.[2] Weinberg was, however, able to discuss the matter with Arnold on March 25, 1999. Although Arnold denied the allegations, Weinberg instructed him not to have any further contact with Bradford. Weinberg then left a message for Bradford, requesting that she meet with him. Bradford apparently attempted unsuccessfully to contact Weinberg by telephone.

Frustrated that her workstation had not yet been moved and emotional following her discussions with Bucek, Bradford moved her own workstation to the opposite side of GB&L's floor. Bradford then went to visit Bucek. She admits that she was crying and very emotional during at this time. Bucek informed Bradford that Weinberg had discussed the matter with Arnold and that Bucek would find Weinberg and have him again contact Bradford. However, an emotional Bradford returned to Bucek's office less than one hour later. Allegedly in response to Bradford's emotional state, Bucek told Bradford to "leave now and the firm w[ould] pay [her] through

---

[2]     Bradford testified that she may have formally accepted the job offer from Ireson & Weizel on this date, March 24, 1999.

the end of [her] two-week notice."  Bradford left and was paid by GB&L through her resignation date, April 6, 1999 without complaint.

On November 20, 2000, Bradford filed this lawsuit, claiming sexual harassment, retaliation and intentional infliction of emotional distress against GB&L, and claiming intentional infliction of emotional distress and assault and battery against Arnold, individually.  The district court referred the case to a magistrate judge, and on March 19, 2002, the district court adopted the memorandum and recommendation of the magistrate judge granting summary judgment in favor of GB&L and Arnold on all claims except Bradford's assault and battery claim against Arnold.  As to this claim, the court declined to exercise supplemental jurisdiction and thus dismissed the claim without prejudice.  On March 19, 2002, the district court entered a final judgment stating the same.

Bradford appeals the district court's judgment only to the extent it dismissed her Title VII retaliation claim against GB&L and insofar as the district court declined to exercise supplemental jurisdiction over her state law claim for assault and battery.

## II.   STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo, applying the same standards as the district court. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir.), cert. denied, 122 S. Ct. 347 (2001).  Summary judgment should be granted if there is no genuine issue of material fact for trial and the moving party is

entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). However, when the non-moving party bears the burden of proof on a claim, the moving party may obtain summary judgment without providing evidence that negates the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). Rather, the moving party need only highlight the absence of evidence in support of the non-moving party's claim. See id.

We review the district court's decision to decline to exercise supplemental jurisdiction over Bradford's pendent state law claim for an abuse of discretion. See Robertson v. Neuromedical Ctr., 161 F.3d 292, 296 (5th Cir. 1998); McClelland v. Gronwaldt, 155 F.3d 507, 519 (5th Cir. 1998).

### III.   ANALYSIS OF THE DISTRICT COURT'S ORDER

### A.   Retaliation

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute. 42 U.S.C. § 2000e-3(a) (2000). To prove a prima facie case of retaliation under Title VII, Bradford is required to present evidence that (1) she engaged in activity that is protected under Title VII, (2) GB&L took adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse employment action taken against her. See Mato v. Baldauf, 267 F.3d 444, 450 (5th Cir. 2001); Cain

v. Blackwell, 246 F.3d 758, 761 (5th Cir. 2001).  Here, neither party disputes that Bradford engaged in protected activity by complaining to Bucek regarding Arnold's alleged acts of sexual harassment toward her.  Instead, in the district court and on appeal, GB&L contends that Bradford's retaliation claim fails because she cannot prove that GB&L took adverse employment action against her, and, even if she can prove this element, she cannot demonstrate the necessary causal nexus between this adverse employment action and her protected activity.

The district court agreed with GB&L.  In dismissing Bradford's retaliation claim, it held that "Plaintiff has not established a prima facie case of retaliation because she has not suffered an adverse employment action."  Specifically, it concluded that "[t]he summary judgment evidence fails to raise a fact issue that Plaintiff was constructively discharged because there is no evidence that she was subjected to such intolerable working conditions that would make a reasonable employee feel compelled to resign." (emphasis added).

On appeal (and in her objections to the magistrate judge's memorandum and recommendation to the district court), Bradford argues that the district court erred in limiting its analysis of her retaliation claim to evidence of constructive discharge when "the uncontroverted evidence" demonstrates "that [she] was directly terminated against her will and in violation of the controlling law."  She also contends that, "to a lesser extent," the district

court also erred in its finding that she did not raise a fact issue regarding whether she was constructively discharged because there was "some evidence of constructive discharge" as well. As Bradford represented to the district court that her retaliation claim was rooted in both a constructive discharge theory and a direct wrongful discharge theory, we address each theory in turn.

### (1) Constructive Discharge

"To prove a constructive discharge, [Bradford] must show that a 'reasonable person in [her] shoes would have felt compelled to resign.' . . . Moreover, to be actionable, [Bradford] must demonstrate a 'greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment claim.'" Woods v. Delta Beverage Group, 274 F.3d 295, 301 (5th Cir. 2001) (citations omitted); see also Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997). As stated, here the district court held that Bradford did not raise a genuine fact issue regarding whether she was constructively discharged in retaliation for engaging in protected activity because she did not prove that she was subjected to intolerable working conditions.

Assuming that Bradford could demonstrate the conditions at GB&L rose to the level of severe intolerableness necessary to be actionable under a constructive discharge theory, we find no causal connection between this alleged constructive discharge and her protected conduct. Bradford indisputably resigned (or felt

compelled to resign) <u>before</u> she complained of being sexually harassed by Arnold. Because Bradford fails to causally connect the alleged adverse employment action to the protected activity in this case, she cannot maintain her retaliation claim under a constructive discharge theory. <u>See, e.g.</u>, <u>Zaffuto v. City of Hammond</u>, 308 F.3d 485, 492 (5th Cir. 2002) (holding that the plaintiff officer failed to state a Title VII retaliation claim where the record demonstrated that the suspension occurred <u>before</u> the plaintiff engaged in protected activity); <u>Soledad v. United States Dep't of Treasury</u>, 304 F.3d 500, 507 (5th Cir. 2002) (affirming the grant of summary judgment on plaintiff's Title VII retaliation claim where there was little evidence to show that the defendant "took certain actions because of [plaintiff's] protected activity"); <u>Casarez v. Burlington Northern/Santa Fe Co.</u>, 193 F.3d 334, 338-39 (5th Cir. 1999) (affirming summary judgment in a retaliation case because the employer was not aware of the plaintiff's discrimination complaint when it made the employment decision that the plaintiff claimed was retaliatory).

**(2) Direct Discharge**

Bradford also claims that GB&L directly discharged her forty-eight hours after she engaged in protected activity. A direct termination constitutes an adverse employment action under our circuit precedent. <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702, 707 (5th Cir. 1997). However, here, the evidence does not demonstrate

that GB&L directly discharged Bradford. Rather, the uncontested evidence demonstrates that Bradford unilaterally resigned and that she never retracted this resignation.

Bradford's resignation letter clearly states that "by the advice of [her] physician," she was resigning "[d]ue to continuing health problems" and the need to "cut down" on her hours. During her employ at GB&L, Bradford underwent several surgeries to remedy health-related problems. As a result, Bradford was required to miss fifty-seven work days in 1997 and thirty-seven and one-half work days in 1998. Bradford admits that at the time she was allegedly directly discharged by Bucek, she had already accepted a part-time job with another law firm that allowed her to work less hours. She also admits that she never retracted her resignation letter, nor did she tell GB&L that her physician had not, in fact, advised her to resign from a full-time position. Thus, GB&L would have no reason to doubt that Bradford was, in fact, still exercising her decision to resign from a full-time position at GB&L (for a part-time position already offered to her by another law firm) due to health problems even after making disclosures to Bucek regarding Arnold.

In her letter, Bradford states that she had "enjoyed working [at GB&L] and hope[d] the firm w[ould] keep [her] in mind for any contract positions or temporary assignments that may arise." That both Bradford and Bucek understood that Bradford had somehow retracted her resignation after making allegations of harassment to

Bucek and that the firm then directly discharged her forty-eight hours later is further belied by Bradford's own deposition testimony. Bradford's own testimony reflects that <u>after</u> resigning and complaining to Bucek, Bucek responded by stating that:

> [S]hareholders were going to meet, she [Bucek] would talk to them; that she didn't see any problem with me working there, <u>you know, on a contract basis or temporary assignments</u>; that they would move me to some other part of the firm; and that Gregg Weinberg wanted to talk to me and that he would be talking with me that day.

Rec. at 213. This testimony clearly demonstrates that all involved, including Bradford, gave full effect to Bradford's resignation from her full time position. The only future relationship (following the completion of Bradford's last two-weeks with GB&L) envisioned was that of possible contract or temporary employment, as dictated by the resignation letter. That Bucek responded to Bradford's emotional state two days later by allowing her to simply serve out the remainder of her two-weeks with GB&L at home on paid leave is <u>not</u> evidence of a direct discharge in retaliation for protected conduct. Under her direct discharge theory, Bradford's retaliation claim thus fails because she cannot demonstrate that GB&L took adverse employment action against her. <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702, 707 (5th Cir. 1997) (discussing adverse employment actions).

### B. Supplemental Jurisdiction

After granting summary judgment in favor of GB&L and Arnold on all claims except Bradford's claim for assault and battery against

Arnold under state law, the district court declined to exercise supplemental jurisdiction over this claim.  The claim was thus dismissed, without prejudice.  Bradford appeals this dismissal.  However, as the district court had "dismissed all claims over which it ha[d] original jurisdiction," we find no abuse of discretion in the district court's dismissal of Bradford's assault and battery claim under 28 U.S.C. § 1367.  See McCelland v. Gronwaldt, 155 F.3d 507, 519-20 (5th Cir. 1998) ("[W]hen all federal claims are dismissed or otherwise eliminated from a case prior to trial, we have stated that our 'general rule' is to decline to exercise jurisdiction over the pendent state law claims.") (citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)).[3]

## IV.    CONCLUSION

Upon review of the district court's grant of summary judgment in favor of GB&L on Bradford's retaliation claim and its judgment

---

[3]     Title 28 U.S.C. § 1367 provides, in relevant part, that:

(c)  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
    (1)  the claim raises a novel or complex issue of State law,
    (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    (3)  the district court has dismissed all claims over which it has original jurisdiction, or
    (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
(5)
28 U.S.C. § 1367©) (2000).

declining to exercise supplemental jurisdiction over Bradford's pendent state law claim for assault and battery, we AFFIRM.