

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2003

# Oatway v. Amer Intl Grp Inc

Precedential or Non-Precedential: Precedential

Docket 02-1699

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Oatway v. Amer Intl Grp Inc" (2003). *2003 Decisions.* Paper 589.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/589

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 14, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-1699

———————

DEREK J. OATWAY
*Appellant*

v.

AMERICAN INTERNATIONAL GROUP, INC., Plan
Administrator of Stock Option Plan; AMERICAN
INTERNATIONAL GROUP, INC., a Delaware Corporation;
1987 EMPLOYEE STOCK OPTION PLAN, an employee
welfare benefit plan

———————

On Appeal From the United States District Court
For the District of Delaware
(D.C. No. 01-cv-00033)
District Judge: Honorable Gregory M. Sleet

———————

Submitted pursuant to Third Circuit LAR 34.1(a)
November 4, 2002

Before: BECKER, *Chief Judge*,
McKEE and HILL,*Circuit Judges*.

———————

* Honorable James C. Hill, United States Circuit Judge for the Eleventh
Circuit, sitting by designation.

(Filed: April 14, 2003)

---

JOHN M. STULL, ESQUIRE
1300 North Market Street
P.O. Box 1947
Wilmington, DE 19899

RICHARD R. WIER, JR.
1220 Market Street
Wilmington, DE 19801

*Attorneys for the Appellant*

STEPHEN E. JENKINS
REGINA A. IORII
CAROLYN S. HAKE
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

*Attorneys for the Appellees*

---

## OPINION OF THE COURT

---

HILL, *Circuit Judge*:

Appellant Derek J. Oatway appeals the district court order granting appellees', American International Group, Inc., American International Group, Inc., Plan Administrator, and 1987 Employee Stock Option Plan (collectively, AIG), motion to dismiss his amended complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) on the ground that it fails to state a claim under the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001 *et seq.*[1] Based upon the following, we affirm the judgment of the district court.

---

1. We accept all factual allegations in the amended complaint as true and view them in a light most favorable to the plaintiff. Fed. R. Civ. Proc. 12(b)(6). On a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a court can consider a 'document integral to or explicitly relied upon in the complaint.'" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Oatway was a full-time employee of AIG from 1983 to 1992. During his employment, in consideration of his performance as a key employee, Oatway and AIG entered into two written incentive stock option agreements[2] giving Oatway the right to purchase a set number of AIG common stock shares at a set price per share as provided for in AIG's 1987 Employee Stock Option Plan (1987 Plan). The first was the January 18, 1990 Incentive Stock Option, giving Oatway the option to purchase 200 shares at $96 per share under the 1987 Plan. The second was the October 11, 1990 Incentive Stock Option, giving him the option to purchase 200 shares at $58.625 per share under the 1987 Plan.[3] The agreements were identical in nature. Blank spaces in the agreements were filled in by the parties to reflect the particular date of execution, the number of shares subject to the stock option grant, and the set price per share.

The stated purpose of the 1987 Plan was:

> [T]o advance the interest of [AIG] by providing certain of the *key employees* of AIG and of any parent or subsidiary corporation of AIG, upon whose judgment, initiative and efforts the successful conduct of the business of AIG largely depends, with an *additional incentive* to continue their efforts on behalf of such corporations, as well as to attract to such corporations people of training, experience and ability.

---

2. In general, an incentive stock option enables an executive to delay exercise of the option while the stock appreciates in value. *Executive Compensation: A 1987 Roadmap for the Corporate Advisor*, 43 Bus. Law. 185, 291 (Nov. 1987). The executive can then purchase the stock at what is, at the time of purchase, a bargain price. In the interim, the executive has not been at risk if the value of the stock declines. *Id.* If the value of the stock does decline, without making any cash outlay, the executive forgoes the exercise of the option. *Id.* An incentive stock option accomplishes its goals by affording the executive the potential for an equity interest in the corporation, thereby encouraging him to use his greatest efforts to promote the growth of that corporation. *Id.*

3. By referring to these documents in his amended complaint, Oatway has incorporated these documents by reference into his pleading. *See* note 1 *supra*.

(Emphasis added.)

Under the Plan, each stock option granted to key AIG employees by its board of directors expired ten (10) years from the date of its issuance. An option could not be exercised by an AIG employee until one year after its date of issuance, and then only in predetermined installments. Unexercised options rolled over into subsequent years remaining within the ten-year term. If an employee terminated his or her employment with AIG prior to "normal retirement age," or age 65, then he or she had ninety days within which to exercise his or her remaining AIG stock options.

Oatway retired prior to normal retirement age in 1992. AIG advised him that he had ninety days, or until November 1992, within which to exercise all his options. Oatway alleges that, after he complained to the company about the short duration of time, AIG relented and reinstated the original ten year term.

Eight years passed. Oatway discovered, on or about January 25, 2000, that his option exercise date under the January 18, 1990, incentive stock agreement had expired one week earlier. He claims that he notified AIG by facsimile of his intent and desire to exercise his January 18, 1990 option, but the company refused to honor his request.

Ten more months passed. On October 1, 2000, Oatway attempted to exercise his options, both under the January 18, 1990, and the October 11, 1990, incentive stock option agreements. AIG refused his attempt. Oatway appealed the denial to AIG as "Plan Administrator."

AIG rejected his appeal and Oatway filed suit in district court. The district court granted AIG's motion to dismiss Oatway's amended complaint on the grounds that it lacked subject matter jurisdiction as none of the three AIG incentive stock option agreements were ERISA plans.

This appeal follows.

## II. STANDARD OF REVIEW

In reviewing the dismissal of a complaint by a district court pursuant to Rule 12(b)(6) for failure to state a claim

upon which relief may be granted, our review is plenary and we apply the same test as the district court. *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000). "A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. *Id.*

## III. DISCUSSION

### A. Introduction

Whether or not the stock options granted to Oatway, as a key employee, were given as incentive bonuses to continue employment with AIG, or as deferred compensation arrangements subject to ERISA, is the issue that controls the outcome of this appeal.[4]

Although this issue, whether or not an incentive stock option plan is an employee benefit plan within the meaning of ERISA, is not a novel or particularly new issue, it appears to be an issue of first impression in this circuit. As will be discussed, most courts have uniformly held that an incentive stock option plan is not an ERISA plan.

Interestingly enough, the majority of these courts so holding have been district courts. Not many other circuit courts of appeal have addressed the issue, perhaps relying on the leading case of *Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980), addressing bonus programs in general under ERISA, and its progeny that have followed.

### B. Murphy and Other Circuit Court Cases

In *Murphy*, the company gave bonuses to certain key employees, including Murphy, the president of Inexco, by assigning a specific royalty interest in a drilling prospect it planned to develop. Each employee was given participation

---

4. We affirm all other remaining issues addressed by the district court without discussion.

units, or rights to receive a fractional portion of any proceeds that might thereafter accrue from the designated project. *Murphy*, 611 F.2d at 572.

Murphy claimed that this bonus plan violated ERISA. His complaint was dismissed by the district court for lack of subject matter jurisdiction on the grounds that the bonus plan was not subject to ERISA. *Id.* at 570. The Fifth Circuit agreed.

Relying upon 29 U.S.C. § 1002(1), for the ERISA definition of employee welfare benefit plan,[5] 29 U.S.C. § 1002(2), for the ERISA definition of employee pension benefit plan,[6] and the regulations promulgated thereunder, 29 C.F.R. § 2510.3-2(c),[7] the Fifth Circuit reasoned that the

---

5. ERISA defines an "employee welfare benefit plan" as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care, or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

Section 186(c) includes within the definition of "employee welfare benefit plan" those plans that provide holiday and severance benefits, and benefits that are similar. *See* 29 C.F.R. § 2510.3-1(a)(3).

6. ERISA defines an "employee pension benefit plan" as any plan established or maintained by an employer that, by its express terms, "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 C.F.R. § 1002(2).

7. The Department of Labor, in its regulations, has interpreted ERISA employee pension benefit plans to exclude "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 28 C.F.R. § 2510.3-2(c).

*Murphy* bonus program was not an ERISA plan because it "was evidently designed to provide current rather than retirement income to Inexco's employees." *Id.* at 575-76. In addition, the *Murphy* court considered it significant that contributions were discretionary, given in recognition of special service, awarded in addition to regular compensation, and did not result in the deferral of income. *Id.*

The *Murphy* court reasoned that an ERISA plan is only a plan "designed for the purpose of paying retirement income whether as a result of [its] express terms or surrounding circumstances." *Id. It* concluded that the mere fact that some payments under a plan may be made after an employee has retired or has left the company does not result in ERISA coverage by statutory definition. *Id.* at 576. *See Williams v. Wright*, 927 F.2d 1540 (11th Cir. 1991) (relying on *Murphy,* where a letter agreement between an employee and an employer providing $500 per month on the first of each month was not considered to be an ERISA plan); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325 (11th Cir. 1998) (where a long term incentive plan for senior executives was not considered to be an ERISA plan); *Mauldin v. Worldcom, Inc.*, 263 F.3d 1205 (10th Cir. 2001) (where the court noted its surprise that neither party argued that the stock option agreements were subject to ERISA); *Kerkhof v. MCI Worldcom, Inc.*, 282 F.3d 44 (1st Cir. 2002) (where neither party argued that the MFS plan or the stock option agreement were governed by ERISA).

### C. The District Court Here

Using a *Murphy* analysis, the district court in this case first determined that the AIG stock option incentive plan was not an employee welfare benefit plan under ERISA because its purpose was to operate as an incentive and bonus program, and not as a means to defer compensation or provide retirement benefits. *Oatway v. American Int'l Group, Inc.*, 2002 WL 187512 *3-4 (D. Del. Feb. 05, 2002). In short, the AIG plan was not designed specifically to provide employees with medical, unemployment, disability, death, vacation, or other specified benefits or to provide income following retirement in order to come within the purview of ERISA. *Id.* We agree. *See Murphy*, 611 F.2d at

574; *Hagel v. United Land Co.*, 759 F. Supp. 1199 (E.D. Va. 1991); *Long v. Excel Telecoms. Corp.*, 2000 WL 1562808 (N.D. Tex. Oct. 18, 2000); *Hahn v. National Westminster Bank, N.A.*, 99 F. Supp. 2d 275 (E.D.N.Y. 2000); *Goodrich v. CML Fiberoptics*, 990 F. Supp. 48 (D. Mass. 1998); *Fludgate v. Management Technologies*, 885 F. Supp. 645 (S.D.N.Y. 1995).

The district court went on, also using a *Murphy* analysis, to find that the AIG plan was also not an employee pension benefit plan under ERISA because it was not created for the purpose of providing retirement income, but rather was an incentive plan designed to provide a financial incentive for employees to remain with AIG and improve their performance there. *Oatway*, 2002 WL 187512 at *5. We agree. *See Murphy*, 611 F.2d at 574. Oatway's post-retirement payments were only incidental to the goal of providing current compensation. *See Hahn*, 99 F. Supp. 2d at 279; *Lafian v. Electronic Data Sys. Corp.*, 856 F. Supp. 339 (E.D. Mich. 1994); *Raskin v. Cynet, Inc.* 131 F. Supp. 2d 906 (S.D. Tex. 2001); *Chambless v. Excel Communications, Inc.*, 2002 WL 31990311 (N.D. Tex. July 15, 2002)*; Kaelin v. Tenneco, Inc.*, 28 F. Supp. 2d 478 (N.D. Ill. 1998).

We agree with the legal analysis of *Murphy*, as applied by the district court in this case, and the unbroken line of cases that have followed *Murphy's* reasoning. Here, Oatway's stock options were discretionary, given in recognition of special service, and awarded in addition to his regular compensation. *See Murphy*, 611 F.2d at 575-76. They did not result in the deferral of income even though they could be exercised after he retired. *Id.* In short, the AIG stock option agreements were not ERISA plans.

## IV. CONCLUSION

The order of the district court dismissing Oatway's amended complaint is affirmed.

9

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*