

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-1-2004

# Houston v. Aramark

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1103

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Houston v. Aramark" (2004). *2004 Decisions.* Paper 263.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/263

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  04-1103

PETER HOUSTON,

Appellant

v.

ARAMARK CORPORATION;
1984 STOCK OPTION PLAN OF
THE ARAMARK CORPORATION;
ARAMARK OWNERSHIP PROGRAM
AND ARAMARK; BENEFIT PLAN
ADMINISTRATOR

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 03-cv-03646
District Judge: The Honorable Clarence C. Newcomer

_____

Submitted Pursuant to Third Circuit LAR 34.1
September 30, 2004

Before: RENDELL, FUENTES and SMITH, *Circuit Judges*

(Filed October 1, 2004)
_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

Retired employee Peter Houston sued the Aramark Corporation, its 1984 Stock

Option Plan, its Ownership Program, and the Aramark Benefit Plan Administrator (collectively, Aramark) after Houston learned that the company stock he sold to then-privately held Aramark roughly doubled in value approximately six weeks later upon the corporation's announcement of an initial public offering. Houston asserted two claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001 *et seq*, and one state common law claim. Aramark moved to dismiss Houston's amended complaint pursuant to Federal Rule of Civil Procedure12(b)(6), and the District Court dismissed all counts. For the reasons stated below, we affirm the judgment of the District Court.

The District Court had federal question jurisdiction over the ERISA claims, 28 U.S.C. §1331, and supplemental jurisdiction over the state law claim, 28 U.S.C. §1367. *See Henglein, et al. v. Informal Plan for Plant Shutdown Benefits for Salaried Emples.,* 974 F.2d 391, 397-98 (3d Cir. 1992) (noting that once federal law is invoked, the facts alleged and their legal sufficiency are questions on the merits, and that "after disposal of a federal claim, a district court has discretion to hear, dismiss, or remand a supplemental claim for which there is no independent basis for federal subject matter jurisdiction"). We have jurisdiction under 28 U.S.C. §1291.

## I. Background

Houston worked for Aramark for nearly thirty years before retiring from his executive position in June 2001. During his tenure, Houston entered into two stock

option agreements with Aramark, the 1984 Stock Option Plan (1984 Plan) and the Aramark Ownership Program (ISPO). At the time of his retirement, Houston had amassed 117,602 shares, 18,224 through the 1984 Plan and 102,625 through the ISPO.

Both the 1984 Plan and the ISPO were intended to align the participants' interests with Aramark's. The "performance stock options" under the 1984 Plan were "designed to enable *key ARA management* to purchase shares of ARA Holding Company stock *on terms that will give them a direct, sustained, and long-term interest in ARA's success*." Similarly, the ISPO "provide[d] *selected management and other key employees* opportunities to participate in the ownership of Aramark" and were generally granted "in connection with *hires, promotions, and other forms of recognition of performance*." (Emphasis added.)

As is common with such plans, the stock options awarded Houston by the board of directors allowed him to lock in a purchase price for the shares, and thus their upside potential, without assuming the risk that the shares would depreciate in value. If Aramark prospered, the value of Houston's options would increase, and when certain conditions were met, Houston could purchase the shares at the lower options price set years before. Happily for all participants of the plans, Aramark did in fact prosper, and at the time of his retirement Houston's 117,000 shares were worth approximately $2,446,000. As suggested above, other participants, but not Houston, would soon become happier still.

Houston retired on June 1, 2001. Aramark was then still a privately held company,

3

though going public had often been indicated as a possibility, in which case its shares would very likely appreciate considerably.[1] As part of his retirement planning, in May of 2001, Houston had met with Aramark's Benefits Director, Robert Bevilacqua. In that meeting the two discussed the possibility of Aramark going public. If he knew of it, Bevilacqua did not disclose that Aramark would soon announce its initial public offering. However, Bevilacqua suggested that Houston could postpone his retirement a year to see if Aramark would go public during that time. Houston declined.

Upon his retirement, the Stockholders' Agreement, which governed Houston's ownership of Aramark stock, allowed Aramark the right to repurchase, or "call," Houston's shares at their most recent appraisal price. Aramark called Houston's stock on June 14, 2001, indicating the appraisal price of $20.80 per share, a total of $2,446,121.60 for the 117,602 shares. On July 17, 2001, Aramark announced its initial public offering, which increased the value of Aramark stock to $46.00 per share. Since then, instead of seeing his $2.4m cup as overflowing, Houston has viewed his $5.4m cup as less than half full. Houston's appeal to the Plan Administrator to recalculate the repurchase price to $46.00 was denied, and Houston, believing that Aramark breached its fiduciary

---

[1] Houston had originally planned to stop working in March, but to remain on the payroll until June 1, 2001, by applying his unused vacation days. When exigencies kept him working until June 1, 2001, Houston expected that his retirement date would be pushed back until July 23, 2001. However, on June 1, 2001, a lump sum check for his unused vacation days had already been prepared. Because undoing the error would have been burdensome for the administrator responsible, Houston let the error stand, making his retirement effective June 1, 2001.

obligations to him by withholding material information concerning the impending public offering, commenced this litigation.

The District Court applied this Court's decision in *Oatway v. American International Group, Inc.*, 325 F.3d 184 (3d Cir. 2003) and determined that ERISA does not govern the stock option plans at issue because the retirement advantages offered in them are only incidental to their stated purposes of attracting and retaining key employees, and of aligning participants' interests with those of the corporation. The District Court also dismissed the common law breach of fiduciary duty claim on the grounds that Houston had waived Aramark's obligations by contract.

## II. Standard of Review

We exercise plenary review in an appeal of a District Court's grant of a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Burnstein v. Ret. Account Plan for Emples. of Allegheny Health Educ. and Res. Found.*, 334 F.3d 365, 374 (3d Cir. 2003). "A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997). In considering this appeal, we do not examine whether Houston will ultimately prevail, but whether he is entitled to offer evidence in support of his claims. *See id.*

## III. Discussion

*A.    ERISA Claims*

Houston asserted two causes of action under ERISA: (1) pursuant to 29 U.S.C. § 1132(a)(1)(B), wrongful denial of claimed benefits stemming from the Aramark's Plan Administrator's refusal to recalculate the repurchase price of Houston's shares, and (2) pursuant to 29 U.S.C. § 1132(a)(3), breach of fiduciary duty based on Aramark's nondisclosure of information regarding the impending announcement of an initial public offering.  Determining whether Houston's stock options were incentive bonuses, or rather, deferred compensation subject to ERISA, determines Houston's two causes of action under ERISA.

ERISA defines "employee pension benefit plan" in 29 U.S.C. §1002(2)(A) as "any plan, fund, or program...to the extent that by its express terms or as a result of surrounding circumstances" it (i) "provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond... ."

By their express terms the plans were designed to align key employees' interests with those of Aramark by giving the plans' participants a stake in the company.  Houston, therefore, argues that the surrounding circumstances of the plans indicate that notwithstanding their stated purpose, the 1984 Plan and the ISPO nonetheless fall within ERISA's purview because they provide retirement income or result in income deferred

6

until participants' employment with Aramark ends or beyond.

The question is one of perspective. Houston essentially argues that because he intended to fund his retirement with the stock proceeds, and because the plans resulted in a deferral of a portion of his income to his retirement date and beyond, the plans meet ERISA's definition of "employee pension benefit plan." This interpretation cannot stand. As the Fifth Circuit noted in a leading case on ERISA's applicability to key employee bonus plans, "Any outright conveyance of property to an employee might result in some payment to him after retirement." *Murphy v. Inexco Oil Co.,* 611 F.2d 570, 575 (5th Cir. 1980). The design of the plan at issue, not the individual participants' intended use of the proceeds, must be the perspective from which the definition of "employee pension benefit plan" is determined. *See Oatway v. American International Group, Inc.,* 325 F.3d 184, 189 (3d Cir. 2003) ("We agree with the legal analysis of *Murphy*...and the unbroken line of cases that have followed *Murphy's* reasoning.").

So understood, Aramark's 1984 Plan and ISPO are not ERISA plans under the Department of Labor's interpretation, and the plans fall squarely within this Court's holding in *Oatway*. According to the Department of Labor regulations, "the terms 'employee pension benefit plan' and 'pension plan' shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. §2510.3-2(c).

7

Though Aramark was a privately held corporation, and though the Stockholders' Agreement placed restrictions on the transferability of shares, the deferral of payment for shares from exercised stock options by 1984 Plan and ISPO participants was not systematic. It was simply Houston's choice not to sell his 117,000 shares before he retired, as evidenced by the fact that he indeed sold over 3,000 shares in 1999. That Houston's retirement triggered Aramark's option to call his shares does not change the analysis.

The District Court's determination that the plans here are not materially distinguishable from those in *Oatway* is correct. *Oatway* held that an incentive stock option plan with a stated purpose of "providing certain key employees...with additional incentive to continue their efforts on behalf of [the defendant corporations]" was not an ERISA plan. *Oatway,* 325 F.3d at 186, 189. As they were to Mr. Oatway, the stock options granted Houston "were discretionary, given in recognition of special service, and awarded in addition to his regular compensation." *Id.* at 189. Though Houston elected not to sell most of his exercised stock options before Aramark called them upon his retirement, the deferral was not systematic.[2] Therefore, Aramark's 1984 Plan and ISPO are not ERISA pension benefit plans.

---

[2] The facts of this case do not necessitate that we determine the precise point at which exercised stock options become "income" under ERISA. *Oatway* suggests, however, that stock options are income at the time they are granted. *See Oatway*, 325 F.3d at 189 ("[The stock options] did not result in the deferral of income even though they could be exercised after he retired.").

*B. State Fiduciary Duty Claim*

The waivability of fiduciary duties owed by a majority shareholder to a minority shareholder is the issue that controls the state law claim. The District Court held that by consenting to the Stockholder's Agreement, Houston waived Aramark's duty to disclose future events which would impact the value of Houston's shares. Under Delaware law, Aramark owed Houston fiduciary duties, *Ivanhoe Partners v. Newport Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987), but those duties were amendable by contract. *See Coleman v. Taub*, 638 F.2d 628, 636 (3d Cir. 1981) (noting in the context of a corporate merger that a minority shareholder can "bargain away" his interests, thus eliminating the possibility of a breach of fiduciary duty).

Houston bargained away his right to the information specifically at issue here. Houston was a party to the Stockholder's Agreement, which states that at the time a shareholder sells his shares, there may

> be proposed or pending an event or a transaction that could affect the Appraisal Price of the Common Stock, and that the Appraisal Price of the Common Stock (and, accordingly, the repurchase price) may be substantially less than the fair market value as of the current date, and further acknowledges and agrees that ARAMARK may have valid business reasons, and in any case shall not be required to, disclose any event or transaction that may have occurred or be proposed or pending at the time of any such sale.

It is difficult to imagine a clearer waiver of Aramark's duty to disclose the impending announcement of its initial public offering. The District Court correctly

dismissed Houston's breach of duty claim.  Because we conclude that Houston waived Aramark's duty to disclose future events, we need not address the issue of the effectiveness of Houston's release included in the Share Repurchase Agreement.